**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| In re:<br><br>**Terrance J. McClinch,**<br><br>Debtor. | Chapter 11<br><br>Case No. 18-10568 |

**DEBTOR'S APPLICATION TO EMPLOY AND RETAIN MARK F. STICKNEY AND SPINGLASS MANAGEMENT GROUP, LLC TO PROVIDE FINANCIAL CONSULTATION SERVICES AND TO ASSIST THE DEBTOR IN EXECUTING HIS OBLIGATIONS AS
DEBTOR-IN-POSSESSION**

Terrance J. McClinch, the debtor and debtor-in-possession in the above-captioned chapter 11 bankruptcy case (the "Debtor"), by and through undersigned proposed counsel, and pursuant to §§ 327 and 328 of title 11 of the United States Code (the "Bankruptcy Code"), or, in the alternative, pursuant to §§ 105(a) and 363 of the Bankruptcy Code, moves this Court for an order authorizing the employment and retention of Mark F. Stickney ("Stickney") and Spinglass Management Group, LLC ("Spinglass") to provide financial consultation services and to assist the Debtor in executing his obligations as debtor-in-possession. In support of this application (the "Application"), the Debtor submits the affidavit of Stickney (the "Affidavit"), which is attached hereto as **Exhibit A**, and the Debtor further states as follows:

**JURISDICTION AND VENUE**

1. This Court has jurisdiction to entertain this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

**BACKGROUND**

3. On September 27, 2018 (the "Petition Date"), the Debtor filed a petition for relief under chapter 11 the Bankruptcy Code. No trustee or examiner has been appointed in the Debtor's chapter 11 case, and no official committee has been appointed or designated.

4. As of the Petition Date, the Debtor owns, among other assets, residential real property located at 5 & 11 Alley Road, East Boothbay, Maine, and 2661 Congress Street, Fairfield, Connecticut. The Debtor is continuing in possession of these properties and his other assets, and he is managing his affairs as a debtor-in-possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.

5. For several months prior to and after the Petition Date, the Debtor has experienced certain medical conditions that have required frequent treatments, including hospitalizations. As a result of this situation, the Debtor has been unable to travel, at the advice of his medical team, to return to his residence in East Boothbay, Maine, and the Debtor instead has been forced to remain at his current location in Montana. The medical issues and inability to travel to Maine also have limited the Debtor's ability to manage his affairs both personally and as they relate to his bankruptcy case, including his obligations as a debtor-in-possession. For example, preparing for and attending the meeting of creditors under § 341 has proven challenging for the Debtor due to his inability to travel, despite his best efforts. And the inability to travel to Maine has made it difficult for the Debtor to compile the necessary paperwork for the bankruptcy case, such as the information required for preparing his schedules, and it also has delayed the Debtor in reviewing and executing necessary documents and pleadings.

6. In addition, the Debtor owns multiple properties that require management and that may potentially be sold in this case, and the Debtor also is the owner and manager of several

limited liability companies, including affiliated chapter 11 debtors Circle 9 Cattle Company, LLC (Case No. 18-10569, chapter 11 petition filed on September 27, 2018) and Candlelight Farms Aviation, LLC (Case No. 18-10579, chapter 11 petition filed on October 2, 2018), as well as other non-debtor entities, such as 185 Thorpe Street Corporation ("Thorpe Street"), a limited liability company organized under the laws of the State of Connecticut that is wholly owned by the Debtor.

## RELIEF REQUESTED

7.  By this Application, the Debtor seeks approval pursuant to §§ 327 and 328 of the Bankruptcy Code, or, in the alternative, under §§ 105(a) and 363 of the Bankruptcy Code, to employ and retain Stickney and Spinglass to provide financial consultation services and to assist the Debtor in executing his obligations as debtor-in-possession under the Bankruptcy Code.

## BASIS FOR RELIEF

**A.    Applicable Law**

8.  Section 327(a) of the Bankruptcy Code provides that a debtor-in-possession is authorized to employ one or more advisors that do not hold or represent an interest adverse to the estate and that are "disinterested persons," as that term is defined in § 101(14) of the Bankruptcy Code, to represent or assist the debtor in carrying out its duties under the Bankruptcy Code. See 11 U.S.C. §§ 101(14), 327(a). Section 1107(b) of the Bankruptcy Code modifies §§ 101(14) and 327(a) in cases filed under chapter 11 and provides that a person is not disqualified for employment under § 327(a) by a debtor-in-possession solely because of such person's employment by or representation of the debtor prior to the commencement of the bankruptcy case. See id. § 1107(b). Under § 328(a) of the Bankruptcy Code, an advisor retained under §

3

327(a) may, with the Court's approval, be employed on any reasonable terms and conditions, including on retainer or on an hourly basis. See id. § 328(a).

9.  In the alternative, § 363(b) of the Bankruptcy Code provides, in relevant part, that a debtor-in-possession, "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b). Bankruptcy courts have analyzed the propriety of a debtor's employment of chief restructuring officers, advisors, consultants, and other professionals under § 363 on numerous occasions and have determined that it is an appropriate exercise of the debtor's business judgment to employ a professional in that manner. See In re Copenhaver, Inc., 506 B.R. 757, 764 (Bankr. C.D. Ill. 2014) (approving employment under § 363 given "unique circumstances" of case); In re Clare Oaks, No. 11-48903, Dkt. No. 112 (Bankr N.D. Ill. 2011) (authorizing retention of chief restructuring officer under §§ 105 and 363); In re Fairview Ministries, Inc., No. 11-04386, Dkt. No. 154 (Bankr. N.D. Ill. Mar. 16, 2011) (authorizing retention of restructuring managers and chief implementation officer under § 363); see also In re Nine W. Holdings, Inc., 588 B.R. 678, 693 (Bankr. S.D.N.Y. 2018) (authorizing employment under § 363 where retained professional's responsibilities included managing the day-to-day operations of the debtor).

10. In addition, the Court's general equitable powers, codified in § 105(a) of the Bankruptcy Code, provide further authority for the relief requested herein. Section 105(a) provides that a bankruptcy court may "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). Under § 105(a), the Court has expansive equitable power to fashion any order or decree that is in the interest of preserving or protecting the value of a debtor's assets, as long as the "powers conferred under § 105" are "exercised within the confines of the Bankruptcy Code." Disch v.

Rasmussen, 417 F.3d 769, 777 (7th Cir. 2005) (internal citation omitted); In re Nosek, 544 F.3d 34, 43 (1st Cir. 2008) ("Section 105(a) of the Code provides the bankruptcy court broad authority to 'exercise its equitable powers-where 'necessary' or 'appropriate' to facilitate the implementation of other Bankruptcy Code provisions.") (citation omitted); Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1069 (2d Cir. 1983) ("[A] bankruptcy judge must have substantial freedom to tailor his orders to meet differing circumstances.").

B.    **Stickney's and Spinglass's Qualifications**

11.    In consideration of the Debtor's medical situation and the complexity of his financial affairs, the Debtor has determined that the services of an experienced financial consultant and advisor will substantially increase his attempts to maximize the value of his estate and to ensure that the Debtor is able to meet his obligations as debtor-in-possession. Stickney is well qualified to act on the Debtor's behalf given his extensive knowledge and expertise with respect to chapter 11 proceedings. The Debtor selected Stickney because of his extensive experience in financial matters in general, and in turnaround and restructuring support in particular. In addition, the Debtor has previously worked with Stickney and Spinglass on the Debtor's financial affairs, so Stickney and his team at Spinglass already are knowledgeable about many of the issues in this case. Further, the Debtor believes that Stickney has the experience and judgment such that Stickney is well qualified to manage the day-to-day activities and decision making for the Debtor, particularly while the Debtor remains in Montana.

C.    **Services to be Rendered, and Duties and Powers of Stickney**

12.    In accordance with Local Rule 2014-3, through this Application, the Debtor seeks Court approval to grant Stickney all of the powers and duties to manage the day-to-day

5

operations and debtor-in-possession obligations of the Debtor as a trustee would have if appointed under § 1104 of the Bankruptcy Code, as such powers and duties are described in § 1106 of the Bankruptcy Code; provided, however, that the Debtor shall maintain control and final decision making authority as it pertains to the significant, non-ordinary course decisions in the case, such as the disposition of all or material portions of the Debtor's assets, conversion or dismissal of the case, and the terms of any plan of reorganization or liquidation.

13.    Without limiting the powers and duties of Stickney as set forth above, specific services that Stickney may render shall include: (a) assisting the Debtor and the Debtor's counsel in proposing, confirming, and implementing a plan of reorganization; (b) reviewing and managing the Debtor's financial affairs, including, but not limited to, analyzing the Debtor's debt, collateral, and financial status, and establishing and operating the Debtor's bank accounts and paying ordinary and necessary costs of the estate; (c) preparing schedules, monthly operating reports, and other required reporting; (d) assisting the Debtor in negotiations with prospective buyers of the Debtor's assets; (e) consulting with and directing counsel for the Debtor regarding the Debtor's bankruptcy case; (f) communicating with creditors regarding the Debtor's bankruptcy case; (g) assisting the Debtor's counsel in reviewing and objecting to claims; and (h) providing guidance and rendering decisions on behalf of the Debtor in regard to the Debtor's day-to-day obligations as debtor-in-possession.

**D.    Stickney and Spinglass are Disinterested and Do Not Have Any Adverse Interests**

14.    To the extent this Application is evaluated pursuant to § 327, the Debtor submits that Spinglass does not hold or represent any interest adverse to the Debtor's estate and is a "disinterested person" as that phrase is defined in § 101(14) of the Bankruptcy Code, as modified by § 1107(b). Other than as set forth in the Affidavit, Spinglass and Stickney: (a) have no

6

connection with the Debtor's creditors, other parties in interest, the United States Trustee, or any person employed in the Office of the United States Trustee; and (b) do not hold any interest adverse to the Debtor's estates. A list of the Debtor's creditors and parties in interest is included as **Exhibit A** to the Affidavit.

15. Alternatively, if this Application is granted pursuant to §§ 105(a) and 363(b) of the Bankruptcy Code, and not § 327, the Debtor need not make disclosures under Rule 2014 of the Federal Rules of Bankruptcy Procedures or qualify as a "disinterested person," as defined in § 101(14) of the Bankruptcy Code. See In re Nine W. Holdings, 588 B.R. at 695 (because § 327 does not apply, court need not consider whether professional is disinterested under 101(14)).

E. **Arrangement for Compensation and Indemnification**

16. Spinglass performed financial advising services to the Debtor prior to the Petition Date. The Debtor does not currently owe Spinglass any money. Spinglass currently holds a retainer in regard to the Debtor and related entities in the amount of $2,816.50. A brief biography of each Spinglass professional who may work on the Debtor's bankruptcy case is included at **Exhibit B** to the Affidavit.

17. Premised on the Debtor's current financial and liquidity issues, the Debtor is currently unable to fund fees to Spinglass. As a result, currently, any obligations owed to Spinglass as a result of the bankruptcy case will be paid by Thorpe Street, subject to Court approval. In the event payment arrangements change, the Debtor will promptly notify this Court.

18. In accordance with Local Rule 2014-3, Thorpe Street proposes to pay Spinglass its customary hourly rates for representation of debtors in reorganization cases in effect as set forth in the Affidavit. Spinglass's hourly rates are set at levels designed to fairly compensate

Spinglass for its professional services and to cover fixed and routine overhead expenses. Hourly rates vary with the experience and seniority of the individuals assigned. The hourly rates to be charged for services rendered in connection with the Debtor's bankruptcy case are set forth in the Affidavit. These hourly rates are subject to change from time to time in accordance with Spinglass's customary billing practices and procedures. The Debtor, subject to Court approval, also proposes that Spinglass will be reimbursed for its actual and necessary expenses incurred in connection with the services discussed above.

19. Despite the funding to be provided by Thorpe Street, the Debtor understands that Spinglass intends to apply to the Court for compensation for professional services rendered and reimbursement of expenses incurred in connection with his bankruptcy case in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330, and any applicable orders of this Court; provided, however, that the fees and expenses may be funded by Thorpe Street in accordance with ordinary invoicing from Spinglass.

20. Where professional fees and expenses in a bankruptcy case are to be funded by a non-debtor affiliate or insider of the debtor, courts have looked to the following factors to determine whether the arrangement is permissible:

    (1)    the arrangement must be fully disclosed to the debtor/client and the third party payor/insider;

    (2)    the debtor must expressly consent to the arrangement;

    (3)    the third party payor/insider must retain independent legal counsel and must understand that the attorney's duty of undivided loyalty is owed exclusively to the debtor/client;

> (4) the factual and legal relationship between the third party payor/insider, the debtor, the respective attorneys, and their contractual arrangement concerning the fees, must be fully disclosed to the Court at the outset of the debtor's bankruptcy representation; and
>
> (5) the debtor's attorney/applicant must demonstrate and represent to the Court's satisfaction the absence of facts which would otherwise create non-disinterestedness, actual conflict, or impermissible potential for a conflict of interest.

In re Lotus Properties LP, 200 B.R. 388, 393 (Bankr. C.D. Cal. 1996) (citing In re Kelton, 109 B.R. 641, 658 (Bankr. D. Vt. 1989)). Applying such factors here, the above funding arrangement with Thorpe Street has been fully disclosed to the Debtor, and the Debtor has expressly consented to the arrangement. The funding arrangement also has been disclosed to Thorpe Street and its counsel, and it has been made clear to Thorpe Street that Spinglass's loyalty is to the Debtor, not Thorpe Street. Spinglass and the Debtor have fully disclosed the funding arrangement to the Court through this Application and the Affidavit. Moreover, the Debtor believes that the funding arrangement will benefit the Debtor's estate by reducing the costs to the Debtor from the bankruptcy case.

21. Because of the variety and complexity of the services that are required, Spinglass is unable to precisely estimate the total cost of services to be rendered in the Debtor's case.

22. Further, the Debtor requests entry of an order by the Court that the Debtor and its estate shall indemnify and hold harmless Stickney, Spinglass, and Spinglass's officers, directors, principals, agents, and employees (collectively, the "Indemnified Persons"), from and against any and all claims, liabilities, damages, obligations, costs, and expenses (including reasonable attorneys' fees and expenses and costs of investigation) arising out of or relating to this retention, and the Indemnified Persons shall not be liable for any acts of omission or commission in such capacity, except to the extent that any such claim, liability, obligation, damages, cost, or expense

shall have been determined in a final, non-appealable order of a court of competent jurisdiction to have resulted from the gross negligence or willful misconduct of the Indemnified Person or persons in respect of whom such liability is asserted.

23. Alternatively, if Stickney is not employed as a professional under § 327 of the Bankruptcy Code, but rather under §§ 105 and 363, he is not required to submit regular fee applications pursuant to §§ 330 and 331. In that case, Stickney proposes to file with the Bankruptcy Court and cause to be served on the U.S. Trustee a monthly statement of the hours worked by, expenses incurred by, and amounts paid to Stickney and others at Spinglass for their work for the Debtor. These monthly statements will provide the Bankruptcy Court and parties in interest with an opportunity to review and, if necessary, object to, the amounts paid to Spinglass, provided, however, that invoices will be paid by Thorpe Street in the ordinary course.

**F.     The Retention of Stickney is Critical to the Debtor's Success**

24. Denying the relief requested herein would deprive the Debtor of the assistance of a highly qualified person and disadvantage the Debtor and all parties in interest. Accordingly, the services provided are critical to the success of the chapter 11 case. The Debtor's decision to retain Stickney and Spinglass reflects an exercise of the Debtor's sound business judgment.

## NOTICE

25. This Application has been served on the following parties: (a) the United States Trustee; (b) the Debtor's secured creditors; (c) any state or federal taxing authority with a claim against the Debtor; (d) the Debtor's twenty (20) largest unsecured creditors; and (e) all parties that have filed a notice of appearance or requested notice in the Debtor's chapter 11 case. In light of the circumstances of this case and the nature of the relief sought herein, the Debtor submits that no further service of this Application is required.

## **CONCLUSION**

WHEREFORE, the Debtor requests that this Court enter an order: (a) granting this Application; (b) authorizing the Debtor to employ and retain Stickney and Spinglass upon on the terms set forth above; (c) finding that service of this Application in the manner described above is sufficient service under the circumstances of this case and in light of the relief requested in the Application; and (d) granting such other and further relief as the Court deems just and proper.

Dated: November 1, 2018                **TERRANCE J. MCCLINCH**

By his proposed attorneys:

/s/ *Sam Anderson*
D. Sam Anderson, Esq.
Adam R. Prescott, Esq.
BERNSTEIN, SHUR, SAWYER & NELSON, P.A.
100 Middle Street
P.O. Box 9729
Portland, ME 04104
Telephone: (207) 774-1200
Facsimile: (207) 774-1127