# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MAINE

| | |
|---|---|
| In re | ) |
| | ) |
| | ) Case No. 18-10568 |
| TERRANCE J. MCCLINCH, | ) Chapter 11 |
| | ) |
| Debtor. | ) |
| | ) |

**OBJECTION OF THE UNITED STATES TRUSTEE TO DEBTOR'S APPLICATION TO EMPLOY AND RETAIN MARK F. STICKNEY AND SPINGLASS MANAGEMENT GROUP, LLC TO PROVIDE FINANCIAL CONSULTATION SERVICES AND TO ASSIST THE DEBTOR IN EXECUTING ITS OBLIGATIONS AS DEBTOR-IN-POSSESSION**

The United States Trustee, by and through his undersigned counsel and pursuant to 28 U.S.C. § 586 and 11 U.S.C. § 307, hereby submits the following objection (the "Objection") to the Debtor's Application to Employ and Retain Mark F. Stickney and Spinglass Management Group, LLC to Provide Financial Consultation Services and to Assist the Debtor in Executing its Obligations as Debtor-in-Possession (the "Application"):

1. On September 27, 2018, Terrance J. McClinch commenced the above-captioned chapter 11 case by filing a petition for relief under chapter 11 of the United States Bankruptcy Code (the "Code"). Docket Entry No. 01. Mr. McClinch also caused and/or authorized two entities he owns and controls to file for protection under chapter 11 –Candlelight Farms Aviation, LLC (Chapter 11 Case No. 18-10579) (the "Candlelight") and Circle 9 Cattle Company, LLC (Chapter 11 Case No. 18-10569) ("Circle 9").

2. Candlelight owns certain real property in New Milford, Connecticut (the "Airstrip") and is solely owned and managed by Mr. McClinch. Application at ¶ 4.

3. Circle 9 owns certain real property in Whitehall, Montana (the "Ranch") but has no ongoing business operations.

4. Upon information and belief, the primary purpose of the Candlelight and Circle 9 chapter 11 cases is to enable the debtors-in-possession to sell the Ranch and the Airstrip for a sufficient amount that allows them to pay their creditors in full and provide a meaningful surplus to Mr. McClinch, which surplus, upon further information and belief, he will need to fund any proposed chapter 11 plan in this individual case.

5. This case and the companion cases have been stalled. As set forth by Mr. McClinch in the Application, "[his] medical issues and inability to travel to Maine … have limited the Debtor's ability to manage his affairs both personally and as they relate to his bankruptcy case, including his obligations as a debtor-in-possession." Application at ¶ 5.

6. To date, the Debtor has not been examined under oath for his required meeting of creditors pursuant to section 341 of the Code and the parties have not been able to set a date certain for such an examination.[1]

7. To enable this case to move forward, the Debtor proposes that Mr. Stickney and Spinglass Financial Management Services, LLC ("Spinglass") be retained as Chief Restructuring Officer ("CRO") for each debtor[2] – with Spinglass managing the day-to-day functions of each but

---

[1] Due to his medical issues, Mr. McClinch was originally scheduled to appear telephonically at the Debtors' 341 meetings on October 23, 2018. Docket Entry No. 04. These 341 meetings were commenced by the United States Trustee on October 23, 2018. However, there was a miscommunication between Mr. McClinch and his proposed counsel. Mr. McClinch erroneously thought the meetings were to take place at 1 p.m. Mountain Standard Time, when in fact they started two hours prior – 1 p.m. Eastern Standard Time. The parties agreed to reschedule the 341 meetings for the following week but Mr. McClinch was unable to participate due to hospitalization. The meetings have been generally continued pending Mr. McClinch's recovery and until a date certain can be agreed upon.

[2] The captions of the cases ask for Mr. Stickney and Spinglass to be retained as a Financial Advisor. However, the United States Trustee agrees with Camden National Bank that, in substance, the Debtors are seeking to retain them as CRO. The distinction is immaterial for purposes of this Objection, however.

2

keeping final decision making authority relating to, among other things, the disposition of assets, with Mr. McClinch.[3] Application at ¶ 11.

8. Also pending before this Court in the Circle 9 case is Camden National Bank's Motion to (A) Appoint Chapter 11 Trustee Pursuant to 11 U.S.C. § 1104(a), or Alternatively, (B) Convert Case to Chapter 7 Under § 1112(b)(the "Trustee Motion"). Circle 9 Docket No. 25.

9. The Trustee Motion and the Application seek a common goal – both seek to relieve Mr. McClinch of his day-to-day obligations as or on behalf of a debtor-in-possession.

10. Camden National Bank seeks the appointment of a chapter 11 or chapter 7 trustee. In furtherance of this goal, it alleges that Mr. McClinch, as sole member of the Debtor, rejected a Purchase Offer for the purchase of the Property which was (upon information and belief) "an amount sufficient to pay all creditors in full, and to provide an equity distribution to McClinch." Trustee Motion at ¶ 13. Camden National Bank further alleges that (upon information and belief), "the main basis for the Debtor's refusal to sell was McClinch's personal desire to obtain a larger equity recovery as the sole member of the Debtor, which McClinch could then use to satisfy his personal financial obligations." *Id.* Camden National Bank argues (among other things) that the Court should appoint a trustee in the Debtor's case because "McClinch has an irreconcilable conflict of interest and he is acting for his own self-interest rather than exercising his fiduciary duties owed to the [Circle 9] estate." Trustee Motion at part D (¶¶ 29-30).

11. On the other hand, the Debtor seeks relief from the Court in the form of the appointment of a CRO because he is physically unable to assist with the administrative functions required of a chapter 11 debtor-in-possession. Application at ¶ 5. But in so doing, the Debtor has

---

[3] "In consideration of McClinch's medical situation, the Debtor has determined that the services of an experienced financial consultant and advisor will substantially increase its attempts to maximize the value of the estate and to ensure that the Debtor is able to meet its obligations as debtor-in-possession." Application at ¶ 9.

3

admitted to material facts which support a finding that cause exists to dismiss or convert these chapter 11 cases. *See* 11 U.S.C. §§ 1112(b)(4)(G), (H).

12. In the appropriate case, the retention of a CRO may be permissible. But this is not that case. The retention of a CRO as proposed in this case, where the Mr. McClinch retains ultimate decision-making authority with respect to the disposition of the assets of the three estate, does nothing to resolve the conflict between the Debtor's own personal interests and that of the creditors of Circle 9 and Candlelight.[4]

13. Even, assuming arguendo, there was no actual conflict of interest, the Application cannot be approved until more information about Thorpe Street is disclosed to the Court. Thorpe Street has been proposed as the party to pay Spinglass for its professional services rendered in the Debtor's case. Application at ¶ 17.

14. As the Debtor itself notes in the Application, where professional fees and expenses are to be funded by a third party, among other things, the "factual and legal relationship between the third party payor/insider, the debtor, the respective attorneys, and their contractual arrangement concerning fees, must be fully disclosed to the Court at the outset of the debtor's bankruptcy representation." Application at ¶ 19 (citing *In re Lotus Properties L.P.,* 200 B.R. 388, 393 (Bankr. C.D. Cal 1996)(citing *In re Kelton*, 109 B.R. 641, 658 (Bankr. D. Vt. 1989)).

15. While the Debtor has provided disclosure of the contractual terms between Thorpe and Spinglass for payment of fees and expenses, the Debtor has not provided much information about the factual and legal relationship between Thorpe and the Debtor. Without more facts, the Court cannot make a determination about whether this proposed arrangement is permissible.

---

[4] The United States Trustee Program consistently follows the *Jay Alix Protocol* when evaluating motions seeking the appointment of a chief restructuring officer. *See* "Volume 3: Chapter 11 Case Administration," *available at* https://www.justice.gov/ust/file/volume_3_chapter_11_case_administration.pdf/download (pages 106-107).

16. Likewise, the Debtor has not provided sufficient information relating to the indemnification provision outlined in the Application. While in general, a debtor's indemnification of a financial advisor for ordinary negligence is reasonable under the "business judgment" standard, a factual record must be presented which would support a finding that such a provision is necessary as well as reasonable. *See United Artists Theater Co. v. Walton (In re United Artists Theater Co.),* 315 F.3d 217 (3d Cir. 2003).

17. For these reasons, the United States Trustee objects to the Application.

WHEREFORE, the United States Trustee respectfully requests that the Court enter an order (a) denying the Application; and (b) for such other and further relief as the Court deems just and proper.

Dated: November 6, 2018

Respectfully submitted,

WILLIAM K. HARRINGTON
UNITED STATES TRUSTEE

By:  /s/ Jennifer H. Pincus
Jennifer H. Pincus
Trial Attorney
537 Congress Street, Suite 300
Portland, ME 04101
(207) 780-3564 – Ext. 205
Jennifer.H.Pincus@usdoj.gov