**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MAINE**

|  |  |  |
|---|---|---|
| In re | ) | |
| | ) | |
| | ) | Case No. 18-10568 |
| TERRANCE J. MCCLINCH, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |
| | ) | |

### OBJECTION OF THE UNITED STATES TRUSTEE TO DEBTOR'S APPLICATION TO EMPLOY BERNSTEIN, SHUR AS COUNSEL TO THE DEBTOR

The United States Trustee (hereafter "UST"), through counsel and pursuant to 28 U.S.C. § 586 and 11 U.S.C. §§ 307 and 327(a), objects to the Debtor's Application to Employ Bernstein, Shur, Sawyer & Nelson, P.A. ("BSSN") as counsel to the Debtor (Docket Entry #40, hereafter the "Employment Application"). The UST objects to the Employment Application because two limited liability companies (the "LLCs"), which are wholly owned and managed by the Debtor, also seek to employ BSSN as counsel in their pending chapter 11 proceedings. The duties of the Debtor as a fiduciary for his individual estate may conflict with his duties as the sole manager of the LLCs. These conflicting duties, coupled with his interest as a guarantor of certain LLC liabilities, is sufficiently adverse to the interests represented by BSSN in the LLC proceedings to disqualify BSSN from representation of the Debtor in this case.

### A.  FACTS

1.     The Debtor, Terrance J. McClinch, commenced the above-captioned chapter 11 case on September 27, 2018.

2.      Mr. McClinch also authorized two entities he owns and controls to file for protection under chapter 11 –Candlelight Farms Aviation, LLC (Chapter 11 Case No. 18-10579) ("Candlelight") and Circle 9 Cattle Company, LLC (Chapter 11 Case No. 18-10569) ("Circle 9").

3.      BSSN seeks authority to serve as general counsel in all three cases. *See, Docket Entry #40, Circle 9, Docket Entry #22*, and *Candlelight Docket Entry #19*.

4.      Candlelight owns certain real property in New Milford, Connecticut (the "Airstrip") and is solely owned and managed by Mr. McClinch.  See *McClinch Schedules A/B.*

5.      Circle 9 is also solely owned and managed by Mr. McClinch. *Id.* It owns certain real property in Whitehall, Montana (the "Ranch").

6.      The UST is informed and believes that the primary purpose of the Candlelight and Circle 9 chapter 11 cases is to liquidate the LLC assets for a sum sufficient to pay the LLCs' creditors in full and provide a "meaningful" surplus to Mr. McClinch.

7.      Mr. McClinch is apparently dependent upon such a surplus in order to fund any proposed chapter 11 plan in this case.  His only source of income is identified as social security benefits. He reports a significant deficit between his monthly income and his monthly expenses.

8.      Mr. McClinch also seeks relief from the Court in the form of the appointment of a financial consultant in each of the three cases because he is physically unable to assist with the administrative functions required of a

2

chapter 11 debtor-in-possession. See, *Application to Employ and Retain Mark F. Stickney and Spinglass Management Group, LLC, Docket Entry #43, Circle 9, Docket Entry #29, and Candlelight Docket Entry #22,* (hereafter "Spinglass Applications"). As set forth by Mr. McClinch in the Spinglass Applications, "[his] medical issues and inability to travel to Maine … have limited the Debtor's ability to manage his affairs both personally and as they relate to his bankruptcy case, including his obligations as a debtor-in-possession." *Id.* at ¶ 5.

9.    The UST has opposed the Spinglass Applications because the employment of a financial consultant, while Mr. McClinch retains control over decisions with respect to the sale of property, does nothing to resolve the conflict between McClinch's individual interests and those of the creditors of the LLCs. *Docket Entry* #40.    First Interstate Bank has joined in that objection. *Docket Entry* #41. Camden National Bank has also objected to the Spinglass Application filed in Circle 9, *Docket Entry* #32.

10.    At least in part due to Mr. McClinch's medical condition, he has not been examined under oath for his required meeting of creditors pursuant to section 341 of the Code, nor has he been examined in connection with the section 341 meetings of the LLCs.[1]

---

[1] Due to his medical issues, the UST arranged for Mr. McClinch to appear telephonically at the Debtors' 341 meetings on October 23, 2018.  Docket Entry No. 04.  These 341 meetings were commenced by the United States Trustee on October 23, 2018.  However, there was a miscommunication between Mr. McClinch and his proposed counsel.  Mr. McClinch erroneously thought the meetings were to take place at 1 p.m. Mountain Standard Time, when in fact they started two hours prior – 1 p.m. Eastern Standard Time.  The parties agreed to reschedule the 341 meetings for the following week but Mr. McClinch was unable to participate due to hospitalization.  The meetings have now been scheduled to resume on December 4, 2018.

11.     In the meantime, Camden National Bank has also filed a Motion to appoint a chapter 11 Trustee in the Circle 9 proceeding or, alternatively, to convert the Circle 9 case to chapter 7 under § 1112(b) (the "Trustee Motion"). *Circle 9, Docket Entry* # 25.

12.     The predicates for the Trustee Motion include Camden National Bank's allegation that Mr. McClinch rejected an offer to purchase the "trophy ranch" belonging to Circle 9, for "an amount sufficient to pay all creditors in full, and to provide an equity distribution to McClinch." *Trustee Motion* at ¶ 13. Camden National Bank posits that Mr. McClinch was motivated by his "personal desire to obtain a larger equity recovery as the sole member of the Debtor, which McClinch could then use to satisfy his personal financial obligations." *Id.* Camden National Bank argues (among other things) that the Court should appoint a trustee in the Debtor's case because "McClinch has an irreconcilable conflict of interest and he is acting for his own self-interest rather than exercising his fiduciary duties owed to the [Circle 9] estate." *Trustee Motion* at part D (¶¶ 29-30).

13.     In sum, the Employment Application seeks authority to retain BSSN to represent an individual chapter 11 debtor who is the sole owner of two corporate debtors-in-possession who, in turn, propose to retain BSSN to represent their interests in the same subject matter, i.e. the liquidation and distribution of the proceeds of assets of the estates of the two LLCs.

14.     Mr. McClinch is also the guarantor of Circle 9's obligation to First Interstate Bank. See, *Docket Entry* #22.

4

15.     Camden National Bank, a creditor of Circle 9, has alleged that Mr. McClinch has breached his fiduciary duties to creditors of Circle 9, by managing Circle 9 for his own personal benefit. While that allegation was made in the context of the Trustee Motion, it makes manifest the actual conflict between the estate of Circle 9 and Mr. McClinch.

16.     Mr. McClinch has admitted facts material to his ability to manage the financial affairs of his individual estate, as well as those of Circle 9 and Candlelight, which could support a finding that cause exists to dismiss or convert one or more of these three chapter 11 cases.  *See* 11 U.S.C. §§ 1112(b)(4)(G), (H).

### B.    Legal Authority

17.     Section 327 of the Bankruptcy Code authorizes a debtor-in-possession to employ professionals to assist in the prosecution of a chapter 11 bankruptcy case.  11 U.S.C. §§ 327(a); 1107(a).

18.     Section 327(a) provides that such a professional may not "hold or represent an interest adverse to the estate," and that such a professional must be "disinterested."  11 U.S.C. § 327(a).

19.     A disinterested person is one that "does not have an interest materially adverse to the estate … by reason of any direct or indirect relationship to, connection with, or interest in the debtor, or for any other reason."  11 U.S.C. § 101(14)(c).

20.     Here, BSSN seeks to represent Mr. McClinch when his personal interests already conflict with the creditors of the two LLCs. There may be no per

se prohibition against simultaneous representation of multiple debtors, nor is there a blanket prohibition against the simultaneous representation of an individual and his or her wholly owned entity. Nevertheless there are well established and overarching considerations. Principal among them is that corporate managers owe a duty of care to their wholly owned corporate entities and every debtor-in-possession owes fiduciary duties to its creditors. Those duties require each debtor to "refrain from activities aimed to benefit themselves." *In re DN Associates*, 144 B.R. 195, 199 (Bankr. D. Me. 1992), citing *In re Freedom Solar Center, Inc.* 776 F. 2d 14 (1st Cir. 1985). Judge Haines concluded, "[c]ounsel may not assist in such efforts, on pain of losing the right to compensation." *Id.,* citing *In re Wilde Horse Enterprises, Inc.* 136 B.R. 830, 840 (Bankr. C.D. Cal. 1991).

21.    Corporate counsel has been found to represent an adverse interest when it acted solely to preserve the equity interests of the owner of the corporate debtor. *In re Kendavis Industries International, Inc.* 91 B.R. 742 (Bankr. N.D. Tex. 1988) The Court declared that "whenever counsel for a corporation has any agreement, express or implied, with management…to protect the interests of that party, there is a conflict." *Id.* at 754 (interlineation added).

22.    Mr. McClinch may argue that there is no "active" conflict of interest between and among Mr. McClinch, Cattle 9 and Candlelight and that an "active" conflict of interest, for purposes of determining disinterestedness, is said to be an "active competition between two interests, in which one interest can only be

served at the expense of the other". *See In re Penny,* 334 B.R. 517, 520 (Bankr. D. Mass. 2005) (internal quotations omitted).

## C. Argument

23.     The facts belie the argument that Mr. McClinch's conflicts with LLC creditors are not active or actual or are merely hypothetical.

23.     Marketing property aimed at obtaining the highest possible price benefits both creditors and those with an interest in the surplus, only to a point. When a potential purchaser offers to pay the creditors in full, a conflict may arise if the parties do not agree on the reasonableness of the offer.  Such a conflict is active in this case.

24.     Camden National Bank points to such a conflict between the creditors of the LLCs (of which it is one) and the individual interest of Mr. McClinch. The conflict centers upon the creditors' interest in an efficient administration of estate assets. According to the Bank, Mr. McClinch has already rejected an offer which would enable Circle 9 to pay its creditors in full and generate a surplus. Holding out for an even higher price would benefit only Mr. McClinch (and, presumably, those creditors with recourse to Mr. McClinch). Further delay accomplishes no benefit to creditors and may actually harm them depending upon the costs attendant to delay.

25.     Camden National Bank alleges that the annual carrying costs for the Circle 9 ranch, to be borne by the estate, approximate $623,000.00 of interest accruals alone, plus attorney's fees, property taxes, repairs/maintenance and other expenses in unknown amounts. *Trustee Motion* ¶ 11.

26    Mr. McClinch retains ultimate decision-making authority with respect to the sale and the disposition of the assets of the LLCs. His status as guarantor of Circle 9's obligations to First Interstate Bank compounds the problem identified by Camden National.

27.    "Where one estate is indebted to the other, there exist two groups of creditors which have conflicting claims and payment for one group is necessarily at the expense of the other." *In re Straughn,* 428 B.R. 618, 625 (Bankr. W.D.Pa. 2010) (internal quotations omitted).  In such a case, multiple representation of related debtors may not be permissible.

28.    In *Straughn,* both J.T. Trucking, Inc. and Straughn sought the protections of chapter 11 of the United States Bankruptcy Code.  J.T. Trucking was a limited liability partnership and, from the date of its incorporation, Straughn was its majority shareholder, President and Secretary.  The two cases were closely related; indeed the court noted that "Straughn's personal bankruptcy filing was directly related to the debt incurred by J.T. for which she is currently liable." *In re Straughn,* 428 B.R. at 621-22.  In addition, Straughn was a creditor of J.T. and its bankruptcy estate, due to a certain equipment lease between them.  *Id.* at 623.  "J.T. failed to make the lease payments and is obligated to Straughn in the amount of $7,700.  Straughn believes that the obligation to her is uncollectible and that payment to her, in any amount, is not expected." *Id.*

29.    The bankruptcy court conducted a thorough analysis of the question of whether the conflict of interest that existed due to the claim held by Straughn

disqualified counsel from representing both debtors. *Id.* at 623-26. The court noted that, "'if the same attorney represents both estates, he is faced with the dilemma of advising his clients to choose between conflicting duties which are as president of the corporation and as a fiduciary for the individual estate.'" *Id.* at 625 (quoting *In re Star Broad.*, 81 B.R. 835, 841 (Bankr. D.N.J. 1998) and citing *In re Jeep Eagle 17, Inc.,* 2009 WL 2132428 at *44 (Bankr. D.N.J. July 13, 2009)). The Court concluded that "because one estate is indebted to the other, there is an actual conflict of interest which prohibits the dual representation of both Debtors by Proposed Counsel." *Id.* at 626.

30.    The *Straughn* court went on to address how a co-obligor relationship between debtors "exacerbated" the conflict situation. The court noted that, "[t]he resulting conflict for an attorney representing both a corporation and its majority shareholder, who controls the corporation, is the risk that the shareholder in control will instruct counsel in ways that favor her interest as guarantor at the expense of her fiduciary duty to the corporation." *Id.* (citing *In re Plaza Hotel Corp.,* 111 B.R. 882, 890 (Bankr. E.D.Cal. 1990)).

31.    The UST acknowledges the Debtor's interest in retaining counsel of his choice. However, section 327 disqualifies counsel who are found not to be disinterested even if all affected parties consent. *In re Bonneville Pacific Corp.* 147 B.R. 803, 805 (Bankr. Utah 1992).

32.    Mr. McClinch's freedom to choose counsel does not include the right to retain lawyers who are duty bound to refrain from activities aimed to benefit him at the expense of the estates of the LLCs. The exigencies of these three cases

warrant the employment of counsel who can independently assess and defend the interests of McClinch, unfettered by the duties which flow from the representation of Circle 9 and Candlelight.

For these reasons, the United States Trustee respectfully requests that the Employment Application be DENIED and for such other and further relief as the Court deems just and proper.


Date:  November 21, 2018                    Respectfully submitted,

                                           WILLIAM K. HARRINGTON
                                           UNITED STATES TRUSTEE

                              By:    /s/ Stephen G. Morrell
                                     Stephen G. Morrell, Esq.
                                     Assistant United States Trustee
                                     U.S. Department of Justice
                                     537 Congress Street, Suite 300
                                     Portland, ME 04101
                                     PHONE:  (207) 780-3564 Ext. 205
                                     stephen.g.morrell@usdoj.gov


### CERTIFICATE OF SERVICE

I, Stephen G. Morrell, being over the age of eighteen and an employee of the United States Department of Justice, U.S. Trustee Program, hereby certify that on November 21, 2018, I electronically filed an Objection of the United States Trustee to Application for Order, Pursuant to Sections 327 and 328 of the Bankruptcy Code, Authorizing Employment of Bernstein, Shur, Sawyer & Nelson, P.A., as Attorneys for the Debtors, and this Certificate of Service, which I caused to be served upon each of the parties set forth on this Service List via U.S. mail, postage prepaid, on November 21, 2018.  All other parties listed on the Notice of Electronic Filing have been served electronically.

                                      /s/ Stephen G. Morrell


Service List:
N/A