**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| In re:<br><br>**TERRANCE J. MCCLINCH,**<br><br>　　　　　　　　　Debtor. | Chapter 11<br>Case No. 18-10568 |

### **AMENDED DISCLOSURE STATEMENT WITH RESPECT TO DEBTOR'S PLAN OF REORGANIZATION DATED JUNE 5, 2019**

The above-captioned debtor, Terrance J. McClinch (the "Debtor"),[1] presents this Disclosure Statement to all known Holders of Claims against, and interests in and to, the Debtor, in connection with the Debtor's Plan of Reorganization Dated June 5, 2019 (the "Plan").

### I.    Introduction

The purpose of this Disclosure Statement is to provide such information as may be deemed material, important and necessary for the Debtor's creditors and holders of interests to make an informed decision in exercising their right to vote, if any, to accept or reject the Plan. This Disclosure Statement will also assist the Bankruptcy Court in its determination of whether the Plan complies with all applicable provisions of the Bankruptcy Code and should, therefore, be confirmed.

**IT IS RECOMMENDED THAT EACH CREDITOR AND HOLDER OF AN INTEREST REVIEW THE ENTIRE PLAN AND DISCLOSURE STATEMENT CAREFULLY AND DETERMINE WHETHER OR NOT TO ACCEPT THE PLAN BASED ON THAT CREDITOR'S OR INTEREST HOLDER'S INDEPENDENT EVALUATION AND JUDGMENT.  IT IS IMPORTANT THAT YOU VOTE IF YOU**

---

[1] Capitalized terms not specifically defined when used initially shall have the meaning ascribed to such terms in the Plan.

1

**HAVE A RIGHT TO VOTE. IN DETERMINING WHETHER A PLAN OF REORGANIZATION HAS BEEN ACCEPTED BY THE REQUIRED MAJORITIES OF CREDITORS AND INTEREST HOLDERS, ONLY THOSE CREDITORS AND INTEREST HOLDERS WHO ACTUALLY VOTE ON THE PLAN ARE COUNTED, EXCEPT WHERE SPECIFICALLY STATED OTHERWISE**.

**NO REPRESENTATIONS CONCERNING THE PLAN ARE AUTHORIZED OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT. THE PORTIONS OF THIS DISCLOSURE STATEMENT DESCRIBING THE DEBTOR, THE PLAN, AND THE PRE- AND POST-BANKRUPTCY OPERATIONS OF THE DEBTOR, HAVE BEEN PREPARED FROM INFORMATION SUBMITTED BY REPRESENTATIVES OF THE DEBTOR. THE DEBTOR BELIEVES THIS INFORMATION TO BE ACCURATE AND COMPLETE BUT MAKES NO WARRANTIES AS TO SUCH COMPLETENESS OR ACCURACY. NO REPRESENTATIONS CONCERNING THE DEBTOR ARE AUTHORIZED OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT. CERTAIN OF THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT, BY NATURE, ARE FORWARD-LOOKING AND CONTAIN ESTIMATES AND ASSUMPTIONS. THERE CAN BE NO ASSURANCE THAT SUCH STATEMENTS WILL BE REFLECTIVE OF ACTUAL OUTCOMES.**

## II. The Debtor's Background and Ability to Fund Plan Obligations

The Debtor is an individual who resided in East Boothbay, Maine, as of the Petition Date. The Debtor currently is residing in Connecticut, although he anticipates traveling to Minnesota to receive medical treatment in the near future.

The payments required under the Plan shall be made primarily from the following sources: (a) cash on hand of the Debtor; (b) proceeds of the sale of property owned by the Debtor (or owned by entities owned and controlled by the Debtor); and/or (c) proceeds of causes of action, if any, which the Debtor and/or the estate have brought and/or may elect to bring, including without limitation, any proceeds of causes of action and claims for recovery of avoidable transfers, pursuant to state law and/or chapter 5 of the Bankruptcy Code (although the Debtor does not believe that any recoveries will be material).

More specifically, the Assets currently include the following: The Debtor holds approximately **$80,000.00** in a bank account maintained with JP Morgan Chase Bank, N.A. (the "Chase Account"). The Chase Account has been funded from, among other sources, the proceeds of the sale of property formerly owned by the Debtor that is generally located at 5 and 11 Alley Road, East Boothbay, Maine (the "Boothbay Property"), which sale was approved by an order of the Bankruptcy Court on February 13, 2019 [D.E. 86]. The Chase Account also has been funded through the transfer of the residual funds following the dismissal of the chapter 11 case of Circle 9 Cattle Company, LLC, which entity is owned and controlled by the Debtor.[2] In addition, the Debtor receives into the Chase Account income through a monthly Social Security payment in the amount of **$2,281.00**. In the future, the Debtor anticipates further funding the Chase Account through distributions that he may receive from other companies that he owns,

---

[2] Circle 9 Cattle Company, LLC filed for bankruptcy under chapter 11 of the Bankruptcy Code on September 27, 2018. Its bankruptcy case, No. 18-10569, was dismissed by the Bankruptcy Court on May 8, 2019.

including 185 Thorpe Street Corporation and Candlelight Farms Aviation, LLC.[3] The Debtor also jointly owns the Congress Street Property with his spouse, the estimated value of which is **$2,111,000.00** (based on owner's estimate of value and Zillow.com estimate) and which secures a Claim held by Bank of America in the amount of approximately **$1,097,428.00** as of the Petition Date.

The Debtor intends to use the Chase Account and his other Assets to satisfy his living expenses and the obligations under the Plan, including to satisfy Administrative Claims (including Professional Fees and Expenses).

### III.    Significant Post-Petition Events

As of the Petition Date, the Debtor had obligations to four different lenders purportedly secured by the Assets, as well as Claims for unpaid property taxes held by the Town of Fairfield and the Town of Boothbay. As a result of the sale of the ranch property owned by Circle 9 Cattle Company, LLC in January of 2019, the Debtor paid in full his obligations to Camden National Bank and Coastal Realty Capital, LLC, which obligations were secured by both the Boothbay Property and the Congress Street Property, and Circle 9 Cattle Company, LLC's ranch property in Montana. On January 24, 2019, the Debtor filed in the Bankruptcy Case his Motion for Order Authorizing: (A) Sale of Certain of the Debtor's Property Free and Clear of Liens, Claims, and Encumbrances; (B) Payment of Commission to Debtor's Real Estate Broker; and (C) Distribution of Sale Proceeds at Closing to Certain Secured Parties and Broker [D.E. 76] (the "Sale Motion"). The Bankruptcy Court entered an order granting the Sale Motion [D.E. 86] on February 13, 2019. Upon the closing of the sale agreement contemplated by the Sale Motion, the

---

[3] Candlelight Farms Aviation, LLC filed for bankruptcy under chapter 11 of the Bankruptcy Code on October 2, 2018. The Bankruptcy Court is administering the case at Case No. 18-10579. Its primary asset is an airport property generally located at 5 Green Point Road, New Milford, Connecticut.

proceeds from the sale of the Boothbay Property were applied to fully pay off the Debtor's obligation to Joseph and Madeline M. Lonski and the property taxes owed to the Town of Boothbay, with the remaining proceeds (after further distributions set forth in the Sale Motion) being deposited into the Chase Account. At present, in addition to the property taxes owed to the Town of Fairfield, the Debtor's only remaining purportedly secured creditor is Bank of America.

## IV. Summary of Plan Classification and Treatment of Claims

The Plan provides for the settlement and satisfaction by the Debtor of all classes of claims identified in the Plan in the amounts and over the timeframes set forth therein. Creditors and interest holders are directed to read this entire Disclosure Statement and should not rely solely on this summary in deciding to vote for the Plan. The following is a short summary of the structure and projected outcome of the Plan.

**Classification of Claims**

The Plan provides that each Holder of: (a) a Claim against the Debtor of whatever nature, whether or not scheduled and whether unliquidated, absolute or contingent, including all Claims arising from the rejection of Unexpired Leases and Executory Contracts; or (b) any interest in the Debtor, shall be bound by the provisions of the Plan, and all such Claims and interests shall be classified as follows:

> **Unclassified Claims** shall consist of all Allowed Administrative Claims, including, without limitation, Fees Claims and UST Fees and all Priority Claims.
>
> **Class One** shall consist of the Allowed Secured Claim of Bank of America.
>
> **Class Two** shall consist of the Allowed Secured Claim of the Town of Fairfield.
>
> **Class Three** shall consist of all Allowed Unsecured Claims.

**Treatment of Claims**

Generally, the Plan also provides that the Claims shall be treated as follows:

**Class One Claims**.  In full and final satisfaction of the Claims in Class One, Bank of America shall be paid monthly payments for a period of seven (7) years with payments being made on the first day of each month beginning the first day of the first month following the Effective Date, with a balloon payment for the entire principal amount to be made with the payment of the last payment made under the terms of the Plan.  The monthly payments relating to the Class One Claims shall be equal to the Allowed Claim of Bank of America amortized over a thirty (30) year period with interest calculated at six and one half percent (6.50%) (the prime rate of interest plus one percent as of date of the filing of the Plan).  In the event either party disputes the amount of the Claims in Class One, the first monthly payment under the Plan shall be made on the later of the first day of the first month following the Effective Date or the first day of the first month following the date that the amount of the Allowed Claim has been finally determined by agreement of the Debtor and Bank of America or through a Final Order of the Bankruptcy Court.  The Claims of Bank of America shall be secured by all of the collateral that, as of the Effective Date, secures its Allowed Claim, more specifically, the Congress Street Property.  In the event the Congress Street Property is sold prior to the maturity of the obligations owed to Bank of America as provided for herein, the remaining Class One Claims shall be paid at closing of the sale of the Congress Street Property.  Class One Claims are impaired under the Plan and Bank of America is entitled to vote to accept or reject this Plan.

**Class Two Claims**.  In full and final satisfaction of the Claims in Class Two, the Debtor shall pay such Allowed Claims in accordance with the terms of § 1129(a)(9)(D) of the Bankruptcy Code.  The Debtor shall make annual payments to the Town of Fairfield equal to the total value of such Allowed Claims amortized over the period from the Effective Date to the date which is the fifth anniversary of the Petition Date, with such Allowed Claims accruing interest at the rate of three percent (3%).  The first annual payment under the Plan shall be made on the later of October 1, 2020, or the first day of the first month following the date that the amount of the Allowed Secured Claim has been finally determined by agreement of the Debtor and the Town of Fairfield or through a Final Order of the Bankruptcy Court.  Interest shall start to accrue on the later of the Effective Date or the date that the amount of the Allowed Secured Claim has been finally determined by agreement of the Debtor and the Town of Fairfield or through a Final Order of the Bankruptcy Court.  Each successive annual payment shall be made in the following year by the first day of the month in which the first annual payment was made.  Any Assets which secure the Allowed Secured Claim of the Town of Fairfield as of the Confirmation Date shall continue to secure the Allowed Secured Claim after the Confirmation Date.  In the event the Congress Street Property is sold prior to the maturity of the obligations owed to the Town of Fairfield as provided for herein, the remaining Class Two Claims shall be paid at closing of the sale of the Congress Street Property.  Class Two Claims are impaired under the Plan and the Town of Fairfield is entitled to vote to accept or reject this Plan.

**Class Three Claims**.  In full and final satisfaction of the Claims in Class Three, the Debtor shall make quarterly payments equal to the amount of the Allowed Unsecured Claims against the Debtor amortized over thirty years at an interest rate equal to the Federal Judgment rate of interest in effect on the Confirmation Date with a balloon payment for the remaining amounts owed in relation to the Class Three Claims to be made with the 40th quarterly payment under the Plan. The first quarterly payment under the Plan shall be made on the later of the first day of the first month of the calendar quarter following the Effective Date or the first day of the first month of the calendar quarter following the date that the amount of each Allowed Unsecured Claim has been finally determined by agreement of the Debtor and each Holder of an Allowed Unsecured Claim or through a Final Order of the Bankruptcy Court.  Each successive quarterly payment shall be made on the first day of each successive calendar quarter until the final payment is made which will be with the making of the 40th quarterly payment hereunder.  The Class Three Claims are impaired under the Plan and Holders of Claims in Class Three are entitled to vote to accept or reject this Plan.

**Unclassified Claims**.  The Unclassified Claims against the Debtor shall be paid in full in the following manner: (a) for Administrative Claims, other than Fee Claims, on the later of the Effective Date or the date the Administrative Claim becomes an Allowed Claim or the date agreed to between the Debtor and the claimant holding the Administrative Claim; and (b) in relation to Fee Claims, the date upon which the Fee Claim becomes an Allowed Claim pursuant to an order approving the Fee Claim.  All Priority Claims shall be paid: (a) in accordance with the terms of the Bankruptcy Code; or (b) in accordance with such terms as may be agreed upon by the Debtor and each Holder of such Priority Claim.

Pursuant to the Plan, the Debtor shall be discharged from all of his pre-petition obligations, but the Debtor shall not be discharged of his obligations to make payments under the Plan.  The Debtor believes that the Plan provides for the fair and equitable treatment of all creditor Claims and that the Plan is in the best interests of all creditors and other parties in interest.

### V. Injunction and Stay

Under the Plan, ~~the entry of the Confirmation Order~~ all injunctions or stays provided for in the Chapter 11 Case pursuant to §§ 105 or 362 of the Bankruptcy Code, or otherwise in the Bankruptcy Code, and in existence on the Confirmation Date, will remain in full force and effect until the close of the Chapter 11 Case.  The Plan further provides that, to the full extent provided

7

<span style="color:red">by the Bankruptcy Code, entry of the Confirmation Order will constitute a stay and injunction applicable to all liens, Claims, Encumbrance, and debts discharged.</span>

~~will constitute an injunction applicable to all persons, staying and enjoining the enforcement or attempted enforcement by any means of all Liens, Claims and debts: (A) discharged pursuant to the Plan; and/or (B) not discharged but relating to the Debtor or the Assets of the Debtor~~.

## VI.   Feasibility of the Plan

Under the Bankruptcy Code, in order to confirm the Plan, the Debtor must demonstrate that the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization of the Debtor, unless such liquidation or reorganization is proposed in the Plan. In other words, the Debtor must demonstrate that the Plan is "feasible."

The Plan is feasible because the Debtor has paid off significant debts since the Petition Date (as described in more detail above), which has reduced the Debtor's debt obligations while also providing the Debtor with significant new funds to pay his living expenses and obligations under the Plan.  The paying down of the Debtor's indebtedness to creditors as set forth in the Plan will allow the Debtor to meet his obligations under the Plan and to refinance the amounts owed when the balloon payments become due (as applicable).  The Debtor also continues to own additional businesses that he anticipates will provide significant funding in the future, including Candlelight Farms Aviation, LLC and 185 Thorpe Street Corporation.  The Debtor, therefore, believes that the Plan is feasible based on the restructured debt, current Assets, and anticipated future funding.  Premised on the above, the Plan is not likely to be followed by the liquidation of the Debtor or the need for further financial reorganization.

## VII. Risk Factors

The primary risk factors affecting the amount and timing of the distributions to Holders of Claims are as follows:

1. The properties currently for sale by the Debtor and/or affiliated entities could fail to sell or could sell for less than expected.

2. Some or all of the Assets or the properties owned by affiliated entities could need extraordinary repair or maintenance.

3. The Debtor's health may result in unforeseen medical expenses and related costs, including for travel and housing.

## VIII. Plan Alternatives and Liquidation Analysis

The alternative to the Plan is the liquidation of the Assets in a proceeding under chapter 7 of the Bankruptcy Code, and the distribution of the net proceeds thereof to secured, priority, and unsecured creditors in the order of priority and manner provided under the Bankruptcy Code. In general, this would require that secured creditors be paid first, then administrative expense creditors, including administrative expense creditors in the Chapter 11 Case and in the chapter 7 case (with the latter having priority), then priority creditors, with the balance, if any, distributed to unsecured creditors on a Pro Rata basis.

In a chapter 7 case, all of the Assets would be liquidated. Although it is impossible to determine the exact liquidation value, the ~~Debtor's primary remaining non-cash Asset, the~~ Congress Street Property~~,~~ has a fair market value of approximately **$2,111,000.00** (based on an owner's estimate of value and Zillow.com estimate). Assuming a liquidation value of 75% of fair market value, at liquidation, this property would likely generate approximately **$1,583,000.00** (which amount excludes the costs and expenses associated with liquidating the property). This property is jointly owned by the Debtor, and the property is pledged as security on the Debtor's obligation to Bank of America in the amount of approximately **$1,097,428.00** as

9

of the Petition Date. The Debtor also has equity in Candlelight Farms Aviation, LLC. Given the nature of Candlelight Farms Aviation, LLC's airport asset, it is highly difficult to estimate the value of the Debtor's equity in a liquidation sale. However, the Debtor estimates that a liquidation of Candlelight Farms Aviation, LLC's assets may generate approximately **$300,000.00** for the Debtor, although such a sale may take a significant amount of time to complete because the universe of potential buyers is limited.

~~From the above, in the event the Assets were liquidated under chapter 7 of the Bankruptcy Code, it appears that at least some of the Debtor's remaining creditors would likely receive payment of only a portion of their Claims or would receive no payment at all.~~

In addition, a chapter 7 trustee may be entitled to attempt to avoid and recover preferential payments made by the Debtor in the ninety (90) days prior to the Petition Date (and payments to insiders made within one (1) year of the Petition Date), as well as transfers of property made by the Debtor with actual fraudulent intent or for less than reasonably equivalent value. ~~At this time, the Debtor is still in the process of investigating potential Causes of Action, but based on current information, the~~ Based on its evaluation of potential Causes of Action, the Debtor does not intend to bring any Causes of Action against claimants, and the Debtor, therefore, does not anticipate any significant recoveries if a chapter 7 trustee were appointed. ~~Assuming that a chapter 7 trustee could recover some amounts from Causes of Action, however, the proceeds would first be distributed to Holders of Administrative Claims (including, but not limited to, Professional Fees and Expenses), and then to the Debtor's general unsecured creditors. The Debtor anticipates that any proceeds of Causes of Action would be insufficient to pay Holders of Administrative Claims in full, let alone provide for payments to the Debtor's general unsecured creditors.~~

10

In light of the foregoing analysis, a liquidation of the Assets under chapter 7 of the Bankruptcy Code would ~~be unlikely to~~likely provide for full payment to Holders of secured and Administrative Claims, and there would likely be ~~in~~sufficient proceeds for distribution to the Holders of general Unsecured Claims.  Under the Plan, ~~however,~~ the Debtor proposes to pay Allowed Secured Claims in full with interest (as applicable), and the Debtor proposes to pay Allowed Unsecured Claims in full with interest.  For this reason, the Debtor believes that confirmation of the Plan will result in ~~an enhanced~~a return to all creditors that is not less than the return under a chapter 7 liquidation, and thus will serve the creditors' best interests, as required by § 1129(a)(7)(A).

### IV.    Voting to Accept or Reject the Plan

Enclosed with this Disclosure Statement is a ballot for your use in voting to accept or reject the Plan.  The Debtor encourages you to vote to accept the Plan.  In order for your vote to count, and if you are a creditor of the Debtor, your properly completed and executed ballot must be received **no later than 5:00 p.m. (Eastern Standard Time) on** ──────── , September 26, 2019 at the office of the Debtor's counsel:

> D. Sam Anderson, Esq.
> Bernstein, Shur, Sawyer & Nelson P.A.
> 100 Middle Street, PO Box 9729
> Portland, ME 04104-5029

**EACH CREDITOR SHOULD NOTE THAT IF ANY CLASS OF CLAIMS SHOULD FAIL TO ACCEPT THE PLAN BY THE REQUISITE MAJORITY, THE BANKRUPTCY COURT MAY NONETHELESS ENTER AN ORDER CONFIRMING THE PLAN IF, AFTER NOTICE AND A HEARING, THE BANKRUPTCY COURT FINDS THAT THE PLAN DOES NOT DISCRIMINATE UNFAIRLY AND IS FAIR AND EQUITABLE WITH RESPECT TO ANY IMPAIRED CLASS OF CLAIMS OR**

11

**INTERESTS WHICH HAS NOT ACCEPTED THE PLAN. IF ANY CLASS OF CLAIMS FAILS TO ACCEPT THE PLAN BY THE REQUISITE MAJORITY, THE DEBTOR SHALL SEEK THIS TREATMENT.**

### X.     Confirmation

The Bankruptcy Code requires the Bankruptcy Court to hold a hearing on confirmation of the Plan. The Bankruptcy Code also allows any party in interest to object to confirmation. Any objection to confirmation must be made in writing, filed with the Clerk of the Bankruptcy Court, and served upon all parties who have filed a demand for receipt of papers under Federal Rule of Bankruptcy Procedure 2002, and on Debtor's counsel on or before the date set by the Court. Any party who objects to confirmation must also attend the confirmation hearing, either in person or through counsel.

### XI.    Effect of Confirmation

To the extent provided for by § 1141 of the Bankruptcy Code, confirmation of the Plan shall discharge the Debtor from all Claims arising before the date of Confirmation, except as expressly provided in the Plan. The Confirmation Order shall permanently enjoin all Holders of Claims from taking action contrary to the Plan or to collect upon any Claim other than pursuant to the Plan.

### XII.   Income Tax Consequences

The federal, state, and local tax consequences of the Plan may be complex and, in some cases, uncertain. Such consequences may also vary based upon the individual circumstances of each Holder of a Claim or interest. **ACCORDINGLY, EACH HOLDER OF A CLAIM OR INTEREST IS STRONGLY URGED TO CONSULT WITH ITS OWN TAX ADVISOR REGARDING THE FEDERAL, STATE, AND LOCAL TAX CONSEQUENCES OF THE**

**PLAN. THIS DISCLOSURE STATEMENT MAY NOT BE RELIED UPON FOR, AND SHALL NOT BE DEEMED TO CONSTITUTE, ADVICE ON THE TAX OR OTHER LEGAL EFFECTS OF THE PLAN.** Any federal or state withholding taxes or other amounts required to be withheld under any applicable law shall be deducted and withheld from any distributions under the Plan.

### XIII. Retention of Jurisdiction

To the maximum extent permitted by 28 U.S.C. § 1334 and the Bankruptcy Code, the Debtor has requested that the Bankruptcy Court retain jurisdiction with respect to the following matters:

(a) To adjudicate all controversies concerning the classification, allowance, or determination of any Claim or interest, including, without limitation, any Administrative Expenses;

(b) To hear and determine all Claims arising from rejection of any executory contract, including leases, and to consummate the rejection and termination thereof;

(c) To liquidate damages in connection with any disputed contingent or unliquidated Claims;

(d) To adjudicate all Claims to, or ownership of any property of, the Debtor or in any proceeds thereof arising prior to and after the Effective Date;

(e) To adjudicate all Claims and controversies arising out of any purchases, sales or contracts made or undertaken by the Debtor prior to the Effective Date;

(f) To make such orders as are necessary and appropriate to construe or effectuate the provisions of the Plan;

(g) To hear and determine any and all Causes of Action;

(h) To hear and determine any and all applications of professional persons for allowance of compensation and/or reimbursement of expenses and all other Administrative Expenses which may be pending on, or made after, the Confirmation Date;

(i) To adjudicate any and all motions and Causes of Action pending on the Confirmation Date or filed thereafter within any applicable statutory period;

(j)        To adjudicate any and all controversies and disputes arising under, or in connection with, the Plan or any order or document entered or approved by the Bankruptcy Court in connection with the Debtor, the Chapter 11 Case, or any controversy or dispute which may affect the Debtor's ability to implement or fund the Plan; and

(k)        To hear and determine such other matters as the Bankruptcy Court in its reasonable discretion shall deem appropriate.

## XIV. Conclusion

The Debtor submits that the Plan complies in all respects with chapter 11 of the Bankruptcy Code, and recommends to Holders of Claims who are entitled to vote on the Plan that they vote to accept the Plan. The Debtor reminds such Holders that each ballot, signed and marked to indicate the Holder's vote, must be <u>received</u> by the Debtor's counsel **no later than** ~~_____,~~ **September 26, 2019, at 5:00 p.m. (EST)**.

14

                    Respectfully submitted,

                    **TERRANCE J. MCCLINCH**

                    By his attorneys:

DATED: ~~June 5~~August 8, 2019      /s/   *D. Sam Anderson*
                                                         D. Sam Anderson, Esq.
                                                        Adam Prescott, Esq.
                                                        BERNSTEIN, SHUR, SAWYER & NELSON, P.A.
                                                        100 Middle Street, P.O. Box 9729
                                                        Portland, ME 04104-5029
                                                        Telephone: (207) 774-1200
                                                        sanderson@bernsteinshur.com
                                                        aprescott@bernsteinshur.com