**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| In re:<br><br>**TERRANCE J. MCCLINCH,**<br><br>Debtor. | Chapter 11<br>Case No. 18-10568 |

**ORDER CONFIRMING DEBTOR'S PLAN**
**OF REORGANIZATION DATED JUNE 5, 2019**

With the Plan of Reorganization Dated June 5, 2019 [Dkt. No. 111] (the "Plan") having been filed by Terrance J. McClinch; and the Court having conducted a final hearing (the "Hearing") on confirmation of the Plan (all capitalized terms used herein shall have the meaning ascribed to such terms in the Plan, unless otherwise defined herein); and the Court having considered the arguments of counsel for the Debtor, the evidence at the Hearing, and the materials filed in support of the Plan; and the Court having considered the Plan; and with a copy of the Plan attached hereto as **Exhibit A** and incorporated herein by reference; and with it having been determined after notice and opportunity for a hearing that the requirements set forth in 11 U.S.C. § 1129(a), or 11 U.S.C. § 1129(b), to the extent applicable, have been satisfied; and with the Objection to Confirmation of Debtor's Chapter 11 Plan of Reorganization and Disclosure Statement [D.E. 123] filed by MEB Loan Trust ("MEB") having been resolved pursuant to the terms described during the Hearing and contained herein, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** as follows:

1. The Plan filed by the Debtor, as modified by the terms of this Order, is hereby **CONFIRMED**.

2. Section 4.2 of the Plan is hereby deleted in its entirety and replaced with the following:

> 4.2    Class One. In full and final satisfaction of the Claims in Class One, Bank of America (the definition of which, without limiting the definition set forth in the Plan, shall include MEB and Select Portfolio Servicing) shall be paid monthly payments for a period of seven (7) years with payments being made on the first day of each month beginning on December 1, 2019, with a balloon payment for the entire principal amount to be made with the payment of the last payment made under the terms of the Plan. The monthly payments relating to the Class One Claims shall be equal to the Allowed Claim of Bank of America amortized over a thirty (30) year period with interest calculated at six and one half percent (6.50%) (the prime rate of interest plus one percent as of date of the filing of the Plan). The Claims of Bank of America shall be secured by all of the collateral that, as of the Effective Date, secures its Allowed Claim, more specifically, the Congress Street Property. In the event the Congress Street Property is sold prior to the maturity of the obligations owed to Bank of America as provided for herein, the remaining Class One Claims shall be paid at closing of the sale of the Congress Street Property. Class One Claims are impaired under the Plan and Bank of America is entitled to vote to accept or reject this Plan. The amount of the Allowed Claim of Bank of America in Class One shall be determined as follows: (i) on or before October 11, 2019, Bank of America shall provide to the Debtor an itemized statement reflecting Bank of America's position regarding the amount of the Allowed Claim of Bank of America in Class One, including as to principal, interest, costs, and attorneys' fees, as of November 1, 2019 (the "MEB Claim Statement"); (ii) on or before October 18, 2019, the Debtor shall file on the docket with this Court a statement indicating whether the Debtor accepts or disputes the amount set forth in the MEB Claim Statement; (iii) if the Debtor accepts the amount set forth in the MEB Claim Statement, such amount shall become the Allowed Amount of the Allowed Claim of Bank of America in Class One; and (iv) if the Debtor disputes the amount set forth in the MEB Claim Statement, this Court will conduct a preliminary hearing on October 24, 2019, at 2:00 p.m. to determine the amount of the Allowed Claim of Bank of America. At that hearing, if it appears that there are material facts genuinely in dispute, then the Court will schedule an evidentiary hearing at some point in the future. From and after the date of this Order, the Debtor shall remain current on property taxes for the Congress Street Property and the Debtor shall remain current on and continue to maintain an adequate insurance policy to cover the fair market value of the Congress Street Property. In the event that the Debtor fails to make a timely payment on the Class One Claim, fails to

remain current on property taxes for the Congress Street Property, or fails to maintain a reasonable insurance policy on the Congress Street Property as set forth herein, Bank of America shall provide written notice to the Debtor and his counsel, D. Sam Anderson, stating the basis for the default (the "Default Notice"). If the Debtor fails to cure the default identified in the Default Notice within fifteen (15) business days of the Default Notice, Bank of America shall be entitled to exercise any rights and remedies available to it by law or contract without the need to seek further relief from the Bankruptcy Court.

Date:  October 11, 2019

_____
Michael A. Fagone
United States Bankruptcy Judge
District of Maine

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MAINE

In re:

TERRANCE J. MCCLINCH,

          Debtor.

Chapter 11
Case No. 18-10568

EXHIBIT A

## DEBTOR'S PLAN OF REORGANIZATION
## DATED JUNE 5, 2019

The above-captioned debtor, Terrance J. McClinch, proposes this Plan of Reorganization Dated June 5, 2019, pursuant to § 1121 of the Bankruptcy Code.[1]

## ARTICLE I
## INTRODUCTION

On September 28, 2018, the Debtor filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code, thereby initiating the chapter 11 case of the Debtor. For a more complete description of the Debtor's bankruptcy proceedings, reference should be made to the Disclosure Statement prepared by the Debtor in reference to this Plan.

This Plan provides for the settlement and satisfaction by the Debtor of all classes of claims identified in the Plan in the amounts and over the timeframes set forth herein. As more fully described below, the payments required under the Plan shall be made primarily from the following sources: (a) cash on hand of the Debtor; and (b) proceeds of the sale of property owned by the Debtor (or owned by entities owned and controlled by the Debtor); and/or (c) proceeds of causes of action, if any, which the Debtor and/or the estate have brought and/or may elect to bring, including without limitation, any proceeds of causes of action and claims for recovery of avoidable transfers, pursuant to state law and/or chapter 5 of the Bankruptcy Code (although the Debtor does not believe that any recoveries will be material). For a more detailed statement of the terms of settlement and satisfaction of all classes of claims, reference should be made to the Disclosure Statement.

The Debtor believes that the Plan provides for the fair and equitable treatment of all creditor claims and that the Plan is in the best interest of all creditors, and other parties in interest. All holders of claims against the Debtor are encouraged to read the Plan and Disclosure Statement in their entirety before voting to accept or reject the Plan.

---

[1] Unless otherwise defined in the body of the Plan, capitalized terms shall have the meaning ascribed to such terms in Article II hereof.

1

# ARTICLE II
# DEFINITIONS

2.1 "Administrative Claim" shall mean a claim arising and allowable under § 503(b) of the Bankruptcy Code with respect to the Debtor, including charges against the Debtor's estate under 28 U.S.C. § 1930.

2.2 "Allowed" with respect to a Claim or Interest, other than a Fee Claim, shall mean any Claim or Interest: (a) that is the subject of a timely filed proof of claim; or (b) any Claim or Interest that has been listed in the schedules filed with the Bankruptcy Court by the Debtor pursuant to Bankruptcy Code § 521 and is not listed therein as disputed, unliquidated or contingent; and, in each such case as to which either (i) no objection to the allowance thereof or other similar pleading has been filed within the applicable time period set forth in Article VIII of the Plan, or (ii) an objection or other similar pleading has been filed and the Claim or Interest has been allowed by a Final Order but only to the extent so allowed.

2.3 "Allowed Amount" shall mean the amount of any Allowed Claim or Allowed Interest.

2.4. "Assets" shall mean all property that is property of the Debtor and the Debtor's estate under §§ 541 and 1115 of the Bankruptcy Code, whether such property is now existing or hereafter arising or acquired and wherever located including, without limitation, all Causes of Action and all proceeds and recoveries on Causes of Action, all accounts, contract rights, chattel paper, general intangibles, instruments, securities, furniture, fixtures, machinery, equipment, inventory, intellectual property, domain names, and interest in real estate.

2.5 "Bank of America" shall mean Bank of America, N.A. and any and all predecessors and successors of Bank of America, N.A. and any and all entities affiliated in any way with Bank of America, N.A., including Select Portfolio Services, Inc. (the current servicer).

2.6 "Bankruptcy Code" shall mean 11 U.S.C. §§ 101 et seq., as in effect with respect to the Chapter 11 Case on the Petition Date. All Bankruptcy Code references herein are to the Bankruptcy Code, unless otherwise stated.

2.7 "Bankruptcy Court" shall mean the United States Bankruptcy Court for the District of Maine, or any other court with jurisdiction over the Chapter 11 Case.

2.8 "Bar Date" shall mean the date established by the Bankruptcy Court as the deadline for filing proofs of claims or interests in the Chapter 11 Case.

2.9 "BSSN" shall mean Bernstein, Shur, Sawyer & Nelson, P.A. as counsel

2

for the Debtor.

2.10 "Cash" shall mean payment, including by check, issued by or on behalf of the Debtor with respect to any payment of collected funds required to be made pursuant to the Plan.

2.11 "Causes of Action" shall mean: (a) any and all causes of action belonging to the Debtor or the Estate, whether arising before or after the Petition Date and whether arising under state or federal law, including, but not limited to, causes of action under Bankruptcy Code §§ 544–553 (including any state fraudulent conveyance statute by virtue of § 544); and (b) any and all proceeds, whether in the form of cash or otherwise, from any recoveries on or settlements of such causes of action.

2.12 "Chapter 11 Case" shall mean the chapter 11 case of the Debtor now pending in the Bankruptcy Court pursuant to chapter 11 of the Bankruptcy Code.

2.13 "Claim" shall mean a claim, as defined in Bankruptcy Code § 101(5), against the Debtor.

2.14 "Confirmation Date" shall mean the date on which the Confirmation Order is entered on the docket of the Bankruptcy Court.

2.15 "Confirmation Hearing" shall mean the hearing held by the Bankruptcy Court to consider confirmation of the Plan, as the same may be amended, and as contemplated by Bankruptcy Code § 1128(a).

2.16 "Confirmation Order" shall mean the Order (which need not be a Final Order) confirming the Plan pursuant to Bankruptcy Code § 1129.

2.17 "Congress Street Property" shall mean the real property generally located at 2661 Congress Street, Fairfield, Connecticut.

2.18 "Disclosure Statement" shall mean that certain disclosure statement filed by the Debtor with respect to the Plan and approved as containing adequate information pursuant to a Final Order of the Bankruptcy Court.

2.19 "Effective Date" shall mean the date determined in accordance with the Plan.

2.20 "Encumbrances" shall mean all liens, encumbrances, mortgages, hypothecations, pledges, and security interests of any kind whatsoever.

2.21 "Estate" shall mean the bankruptcy estate of the Debtor, created in the Chapter 11 Case pursuant to § 541 of the Bankruptcy Code, which shall include the continuation of the Estate after confirmation of the Plan.

3

2.22 "Executory Contract" shall mean an executory contract within the meaning of § 365 of the Bankruptcy Code.

2.23 "Fee Claim" shall mean the Administrative Claim of a professional person for compensation and/or reimbursement of expenses.

2.24 "Final Order" shall mean an order or judgment of any court, administrative agency or other tribunal as entered on its docket as to which: (a) the time to appeal or petition for rehearing or certiorari has expired and as to which no appeal or motion for rehearing or petition for certiorari has been timely filed or taken; or (b) if such an appeal or motion for rehearing or petition for certiorari has been timely filed or taken, such order or judgment has been affirmed by the highest tribunal in which review was sought or such appeal, motion for rehearing or petition for certiorari was dismissed or otherwise terminated without modification of such order or judgment, and the time has expired within which any further proceeding for review may be commenced.

2.25 "Holder" shall mean a creditor holding, including by assignment, a Claim against the Estate.

2.26 "Order" shall mean an order of the Bankruptcy Court.

2.27 "Petition Date" shall mean September 28, 2018.

2.28 "Plan" shall mean the Debtor's Plan of Reorganization Dated June 5, 2019, as it may be amended or modified by the Debtor from time to time, together with all exhibits, schedules and other attachments thereto, as the same maybe amended or modified by the Debtor from time to time, all of which are incorporated herein by reference.

2.29 "Post-Petition Bar Date" shall mean the date which is sixty (60) days following the Confirmation Date.

2.30 "Priority Claim" shall mean an Unsecured Claim arising before the Petition Date and allowable under § 507(a)(3) through 507(a)(9) of the Bankruptcy Code.

2.31 "Pro Rata" means proportionate, so that, for example, the ratio of the consideration distributed on account of an Allowed Claim to the amount of the Allowed Claim is the same as the ratio of the consideration distributed on account of all Allowed Claims in such class of Claims to the amount of all Allowed Claims in the class.

2.32 "Secured Claim" shall mean a claim that is secured by a perfected (or similarly binding) Encumbrance on any of the Assets, to the extent provided in § 506 of the Bankruptcy Code.

2.33 "Substantial Consummation" shall have the meaning assigned to such term in § 1101(2) of the Bankruptcy Code.

4

2.34   "Town of Fairfield" shall mean the Town of Fairfield, Connecticut.

2.35   "Unclassified Claims" shall mean all Administrative Expenses, including Fee Claims and UST Fees, and Priority Claims.

2.36   "Unexpired Lease" shall mean a lease that has not expired or terminated within the meaning of § 365 of the Bankruptcy Code.

2.37   "Unsecured Claim" shall mean a Claim which arose before the Petition Date and which is not secured by any interest in any property of the Debtor's estate, and shall include a Claim which arises from the rejection of an Executory Contract or Unexpired Lease, within the meaning of § 365 of the Bankruptcy Code; provided, however, that in order to be an Unsecured Claim, such claim must be evidenced by a proof of claim which has been timely filed by the holder of the Claim (whether or not such proof of claim has been Allowed) prior to the Bar Date, or such Claim must be described on Schedule F filed by the Debtor and not noted as unliquidated, contingent or disputed on such Schedule (whether or not such claim is deemed Allowed).

2.38   "UST Fees" shall mean the quarterly fees paid and payable to the United States Trustee.

## ARTICLE III
## CLASSIFICATION OF CLAIMS

Each Holder of: (a) a Claim against the Debtor of whatever nature, whether or not scheduled and whether unliquidated, absolute or contingent, including all Claims arising from the rejection of Unexpired Leases and Executory Contracts; or (b) any interest in the Debtor, shall be bound by the provisions of the Plan, and all such Claims and interests are hereby classified as follows:

3.1   Unclassified Claims shall consist of all Allowed Administrative Claims, including, without limitation, Fees Claims and UST Fees and all Priority Claims.

3.2   Class One shall consist of the Allowed Secured Claim of Bank of America.

3.4   Class Two shall consist of the Allowed Secured Claim of the Town of Fairfield.

3.6   Class Three shall consist of all Allowed Unsecured Claims.

5

# ARTICLE IV
# TREATMENT OF CLAIMS BY CLASS

All Claims against the Debtor, as finally Allowed by the Bankruptcy Court, shall be fully and finally satisfied in accordance with the provisions of the Plan as follows:

4.1    Unclassified Claims against the Debtor shall be paid in full in the following manner: (a) for Administrative Claims, other than Fee Claims, on the later of the Effective Date or the date the Administrative Claim becomes an Allowed Claim or the date agreed to between the Debtor and the claimant holding the Administrative Claim; and (b) in relation to Fee Claims, the date upon which the Fee Claim becomes an Allowed Claim pursuant to an order approving the Fee Claim.

All Priority Claims shall be paid: (a) in accordance with the terms of the Bankruptcy Code; or (b) in accordance with such terms as may be agreed upon by the Debtor and each Holder of such Priority Claim.

4.2    Class One. In full and final satisfaction of the Claims in Class One, Bank of America shall be paid monthly payments for a period of seven (7) years with payments being made on the first day of each month beginning the first day of the first month following the Effective Date, with a balloon payment for the entire principal amount to be made with the payment of the last payment made under the terms of the Plan. The monthly payments relating to the Class One Claims shall be equal to the Allowed Claim of Bank of America amortized over a thirty (30) year period with interest calculated at six and one half percent (6.50%) (the prime rate of interest plus one percent as of date of the filing of the Plan). In the event either party disputes the amount of the Claims in Class One, the first monthly payment under the Plan shall be made on the later of the first day of the first month following the Effective Date or the first day of the first month following the date that the amount of the Allowed Claim has been finally determined by agreement of the Debtor and Bank of America or through a Final Order of the Bankruptcy Court. The Claims of Bank of America shall be secured by all of the collateral that, as of the Effective Date, secures its Allowed Claim, more specifically, the Congress Street Property. In the event the Congress Street Property is sold prior to the maturity of the obligations owed to Bank of America as provided for herein, the remaining Class One Claims shall be paid at closing of the sale of the Congress Street Property. Class One Claims are impaired under the Plan and Bank of America is entitled to vote to accept or reject this Plan.

4.3    Class Two. In full and final satisfaction of the Claims in Class Two, the Debtor shall pay such Allowed Claims in accordance with the terms of § 1129(a)(9)(D) of the Bankruptcy Code. The Debtor shall make annual payments to the Town of Fairfield equal to the total value of such Allowed Claims amortized over the period from the Effective Date to the date which is the fifth anniversary of the Petition Date, with such Allowed Claims accruing interest at the rate of three percent (3%). The first annual payment under the Plan shall be made on the later of October 1, 2020, or the first day of the first month following the date that the amount of the Allowed Secured Claim has

6

been finally determined by agreement of the Debtor and the Town of Fairfield or through a Final Order of the Bankruptcy Court.  Interest shall start to accrue on the later of the Effective Date or the date that the amount of the Allowed Secured Claim has been finally determined by agreement of the Debtor and the Town of Fairfield or through a Final Order of the Bankruptcy Court.  Each successive annual payment shall be made in the following year by the first day of the month in which the first annual payment was made.  Any Assets which secure the Allowed Secured Claim of the Town of Fairfield as of the Confirmation Date shall continue to secure the Allowed Secured Claim after the Confirmation Date.  In the event the Congress Street Property is sold prior to the maturity of the obligations owed to the Town of Fairfield as provided for herein, the remaining Class Two Claims shall be paid at closing of the sale of the Congress Street Property.  Class Two Claims are impaired under the Plan and the Town of Fairfield is entitled to vote to accept or reject this Plan.

      4.4     <u>Class Three</u>.  In full and final satisfaction of the Claims in Class Three, the Debtor shall make quarterly payments equal to the amount of the Allowed Unsecured Claims against the Debtor amortized over thirty years at an interest rate equal to the Federal Judgment rate of interest in effect on the Confirmation Date with a balloon payment for the remaining amounts owed in relation to the Class Three Claims to be made with the 40th quarterly payment under the Plan.  The first quarterly payment under the Plan shall be made on the later of the first day of the first month of the calendar quarter following the Effective Date or the first day of the first month of the calendar quarter following the date that the amount of each Allowed Unsecured Claim has been finally determined by agreement of the Debtor and each Holder of an Allowed Unsecured Claim or through a Final Order of the Bankruptcy Court.  Each successive quarterly payment shall be made on the first day of each successive calendar quarter until the final payment is made which will be with the making of the 40th quarterly payment hereunder.  The Class Three Claims are impaired under the Plan and Holders of Claims in Class Three are entitled to vote to accept or reject this Plan.

ARTICLE V
<u>MEANS FOR EXECUTION OF THE PLAN</u>

      5.1.     <u>Financing of the Plan Obligations</u>.  The Debtor shall primarily fund his obligations under the Plan from the following sources:  (a) cash on hand of the Debtor; (b) the potential sale of the Congress Street Property; and/or (c) cash generated by the potential sale of the Thorpe Street Project and/or the sale of the property owned by Candlelight Aviation, LLC (after payment of any and all obligations owed to creditors of Candlelight Aviation, LLC).  Additionally, as described above, the Debtor retains the right to investigate and prosecute Causes of Action under the Plan.  All proceeds of Causes of Action shall also be used to fund Plan obligations.  Based on currently available information, it appears that few, if any, Causes of Action exist, and thus the Debtor does not plan to rely on the proceeds of Causes of Action to fund Plan obligations at this time.  In the event that the Debtor recovers proceeds from any Cause of Action, such proceeds shall be used to fund the Plan obligations.

7

5.2     Cram Down.  In the event that any class allowed to vote is deemed impaired under this Plan and refuses to accept the terms of the Plan, the Debtor shall and hereby does move the Bankruptcy Court to confirm the Plan pursuant to § 1129(b) of the Bankruptcy Code.  All Claims of creditors and/or other parties in interest shall be satisfied solely in accordance with the Plan.

## ARTICLE VI
## THE EFFECTIVE DATE

6.1     Effective Date.  Unless the Confirmation Order has been stayed prior thereto, the Effective Date shall be the sixtieth day following the Confirmation Date, provided that such date is not a weekend day or a holiday.  If such date falls on a weekend day or a holiday, the Effective Date shall be the next day which is not a weekend day or a holiday.

## ARTICLE VII
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

7.1     Assumption/Rejection of Certain Executory Contracts and Unexpired Leases.  Unless the subject of a motion to assume pending as of the Effective Date, or dealt with by an Order of this Court entered on or prior to the Effective Date, any and all Executory Contracts and Unexpired Leases of the Debtor shall be deemed rejected as of the Effective Date, if not earlier rejected by other orders of the Bankruptcy Court.  The Debtor does not believe that any Executory Contracts and/or Unexpired Leases exist.

7.2     Damages.  Any claim for damages arising from the rejection or deemed rejection of an Executory Contract or Unexpired Lease must be filed on or before forty-five days after the date of the Confirmation Order, or by such other date as may be specified by Order of the Bankruptcy Court and, if not so filed, will be deemed disallowed, discharged, and forever barred from receiving any distribution under this Plan.  All Allowed Claims arising from the rejection of Executory Contracts and Unexpired Leases shall be classified as Allowed Unsecured Claims.

## ARTICLE VIII
## MISCELLANEOUS PROVISIONS

8.1     Legally Binding Effect.  The provisions of the Plan shall bind all holders of Claims and Interests, whether or not they accept the Plan.

8.2     Claims Subject to Allowance.  Notwithstanding any other provision of the Plan, no distribution shall be made on account of any Claim until such Claim is Allowed.

8.3     Pre-petition Claim and Amendments.  Each Claim as to which a proof of claim is required to be filed on or before the Bar Date and as to which a proof of claim was not filed on or before the Bar Date shall not under any circumstances become an Allowed Claim.  In no event shall the Allowed Amount of any Claim against the Debtor

8

exceed the amount set forth in a proof of claim therefore filed on or before the Bar Date unless the claimant in its proof of claim expressly reserved the right to amend such proof of Claim in which case any such amended proof of claim must be filed by the Confirmation Date.  No order allowing or disallowing a Claim may be reconsidered, pursuant to Bankruptcy Code § 502(j) or otherwise, so as to increase the Allowed Amount thereof after entry of the Confirmation Order.

8.4    Objections to Pre-petition Claims and Interests.  Claims and Interests that arose prior to the Petition Date, and which have not been scheduled by the Debtor as contingent, unliquidated or disputed, or as to which a valid proof of claim or interest has been filed on or before the Bar Date, shall be allowed in full, unless an objection to such Claim or Interest is filed on or before the date which is forty five days after the Confirmation Date.  Claims that have been objected to and not allowed shall have no right to vote with respect to the acceptance or rejection of this Plan, except as otherwise ordered by the Court.

8.5    Bar Date for an Objection to Post-Petition Claims.  Any Claim entitled to priority under Bankruptcy Code § 507(a)(2) arising before the Confirmation Date and still outstanding sixty days thereafter shall be forever barred unless it is the subject of a proof of claim (or, in the case of a Fee Claim, an application for compensation) filed with the Bankruptcy Court on or before the Post-Petition Bar Date.  Any Claim that is the subject of such proof of claim (or application for compensation) shall be Allowed in full unless an objection thereto is filed within thirty days after the Post-Petition Bar Date or such other date as is provided by Order upon motion of the Debtor, except that Fee Claims shall be Allowed only by Order of the Bankruptcy Court.

8.6    Delivery of Distributions. Distributions and deliveries to Holders of Allowed Claims will be made at the addresses reflected in the proof of claim filed by the Holders of Allowed Claims or, if no proof of claim was filed, at the addresses set forth in changes delivered to the Debtor's Schedules; or at the addresses set forth in any written notices of address changes delivered to the Debtor after the date of any related proof of claim.  If any distribution is returned as undeliverable, no further distributions to the Holder will be made unless and until the Debtor is notified of the Holder's then current address, at which time all missed distributions will be made to the Holder without interest.  All Claims for undeliverable distributions must be made to the Debtor on or before the six month anniversary of the delivery date.  After that date, all unclaimed property will be distributed pursuant to the terms of the Plan and the Claim of any Holder with respect to such property will be deemed disallowed, discharged, and forever barred from receiving any distribution under this Plan.

8.7    Means of Cash Payment. Cash payments made pursuant to the Plan will be in United States funds, by the means agreed to by the Debtor and the respective Holders of Allowed Claims, including by check or wire transfer or, in the absence of an agreement, such commercially reasonable manner as the Debtor shall reasonably determine.

9

8.8     Time Bar to Cash Payments.  Checks issued by the Debtor in respect of Distributions to Holders of Allowed Claims pursuant to this Plan will be null and void if not cashed within one hundred twenty days of the date of their issuance.  Requests for reissuance of any check shall be made to the Debtor by the Holder of the Allowed Claim with respect to which the check originally was issued.  Any Claim in respect of such a voided check must be made on or before six months after the date of issuance of the check.  After that date, all Claims in respect of void checks will be discharged and forever barred and the cash, including interest earned thereon, if any, shall be treated as an additional recovery of proceeds for distribution as of the date of expiration of said six month period and thereafter shall be held and distributed in accordance with the terms of the Plan.

8.9     De Minimis Distributions.  No Cash payment of less than fifty dollars ($50.00) will be made by the Debtor to any creditor unless a request is made in writing to the Debtor to make such a payment.

8.10    Debtor's Assets and Causes of Action.  On and after the Confirmation Date, and subject to compliance with the terms of this Plan, the Debtor may, without further approval of the Bankruptcy Court, use, sell, assign, transfer, abandon, settle, or otherwise dispose of at a public or private sale any of the Assets for the purpose of liquidating and converting such assets to cash, making distributions, and fully consummating the Plan.  On and after the Confirmation Date, Causes of Action of the Debtor's estate shall be preserved and retained by the Debtor free and clear of all liens, claims, interests, and Encumbrances, and the Debtor shall have the exclusive right and standing to pursue, enforce, abandon, settle, release, and/or compromise any such Causes of Action.  Confirmation of the Plan and occurrence of the Effective Date thereunder shall not serve to waive, release or preclude on res judicata or any other ground any Claim or Cause of Action of the Debtor.  In the event that the Debtor recovers proceeds from any Cause of Action, such proceeds shall be distributed to the Debtor's Allowed Unsecured Claimants on a pro-rata basis in accordance with the payment terms of the Plan.

8.11    Discharge.  To the fullest extent allowable under the Bankruptcy Code, and except as expressly provided otherwise in the Plan, the Debtor shall have the full benefit of the discharge provided by Bankruptcy Code § 1141(d).  Without limiting the generality of the foregoing, and except as provided in the Plan, the Debtor shall, in accordance with § 1141(d)(5), be permanently released and discharged from all Claims, and all other liens, Claims, Encumbrances, and debts that arose before the Confirmation Date whether or not any such lien, Claim, Encumbrance or debt has been scheduled by the Debtor, a proof of claim has been filed or deemed filed, any such Claim is Allowed, or the Holder of any such Claim has accepted the Plan; provided, however, that nothing herein shall release or discharge the Debtor with respect its obligations to make the payments and to provide the other consideration which is described in this Plan.

8.12    Injunction and Stay.  Unless otherwise provided, all injunctions or stays provided for in the Chapter 11 Case pursuant to §§ 105 or 362 of the Bankruptcy Code,

10

or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the close of the Chapter 11 Case. The entry of the Confirmation Order shall constitute a stay and injunction applicable to all liens, Claims, Encumbrance, and debts discharged.

   8.13  <u>Modification of Confirmed Plan</u>. After the Confirmation Date, the Debtor may modify the Plan under Bankruptcy Code § 1127 and may remedy any defect or omission or reconcile any inconsistency in the Plan or in the Confirmation Order in such manner as may be necessary or appropriate to carry out the purposes and intent of the Plan, so long as the interests of Holders of Claims and Interests are not materially and adversely affected thereby.

   8.14  <u>Substantial Consummation</u>. The Plan shall be deemed to have been substantially consummated when all of the requirements of Bankruptcy Code § 1101(2) have been satisfied.

   8.15  <u>Closing of Case</u>. The Chapter 11 Case shall be deemed closed at such time as the Order closing the case pursuant to Bankruptcy Code § 350 has been entered by the Bankruptcy Court on the motion of the Debtor, and the Order becomes a Final Order.

   8.16  <u>Retained Jurisdiction</u>. The Bankruptcy Court shall retain jurisdiction over the Chapter 11 Case after the Confirmation Date for the following purposes:

  (a)  To adjudicate all controversies concerning the classification, allowance, or determination of any claim or interest, including, without limitation, any administrative claim;

  (b)  To hear and determine all Claims arising from rejection of any executory contract, including leases, and to consummate the rejection and termination thereof;

  (c)  To liquidate damages in connection with any disputed contingent or unliquidated Claims;

  (d)  To adjudicate all Claims to, or ownership of any property of, the Debtor or in any proceeds thereof arising prior to and after the Effective Date;

  (e)  To adjudicate all Claims and controversies arising out of any purchases, sales or contracts made or undertaken by the Debtor prior to the Effective Date;

  (f)  To make such orders as are necessary and appropriate to construe or effectuate the provisions of the Plan;

  (g)  To hear and determine any and all Causes of Action;

Case 18-10568   Doc 144   Filed 06/05/19   Entered 06/05/19 15:57:51   Desc Main
                        Document      Page 15 of 17

  (h)  To hear and determine any and all applications of professional persons for allowance of compensation and/or reimbursement of expenses and all other Administrative Expenses which may be pending on, or made after, the Confirmation Date;

  (i)  To adjudicate any and all motions, adversary proceedings and litigated matters pending on the Confirmation Date or filed thereafter within any applicable statutory period;

  (j)  To adjudicate any and all controversies and disputes arising under, or in connection with, the Plan or any order or document entered or approved by the Bankruptcy Court in connection with the Debtor, the Chapter 11 Case, or any controversy or dispute which may affect the Debtor's ability to implement or fund the Plan; and

  (k)  To hear and determine such other matters as the Bankruptcy Court in its reasonable discretion shall deem appropriate.

  8.17  <u>Dates</u>.  Whenever the Plan requires the Debtor to make a distribution or take some other action on a particular date, such action shall be taken on the required date or as soon as practicable thereafter.

  8.18  <u>Property of the Debtor</u>.  Upon entry of the Confirmation Order, all property of the Debtor's estate shall vest in the Debtor, free and clear of all liens, claims and encumbrances, except to the extent otherwise provided in the Plan.

  8.19  <u>Exculpation</u>.  Neither the Debtor, nor any of his respective attorneys, consultants, advisors, and agents (acting in such capacity), shall have or incur any liability to any entity for any act taken or omitted to be taken in the formulation, preparation, dissemination, implementation, confirmation, or approval of the Plan, the Disclosure Statement related thereto or any contract, instrument, release or other agreement or document provided for or contemplated in connection with the consummation of the transactions set forth in the Plan; provided, however, that the provisions of this section shall not affect the liability of any entity that otherwise would result from any such act or omission to the extent that such act or omission is determined in a Final Order to have constituted gross negligence, willful misconduct or breach of fiduciary duty.  Any of the forgoing parties in all respects shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.

  8.20  <u>Exemption from Transfer Taxes</u>. Pursuant to § 1146(a) of the Bankruptcy Code, the assignment or surrender of any leases or sublease, or the delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, including the execution, delivery and recording of any deed relating to the Congress Street Property, and any other deeds, bills of sale or assignment executed in connection with any disposition of Assets under, in furtherance of, or in connection with the Plan

12

shall not be subject to any stamp, real estate transfer, mortgage recording, sales, use or other similar tax.

   8.21 <u>Binding Effect</u>.  Except as otherwise provided by in Bankruptcy Code, on and after the Confirmation Date, the provisions of the Plan shall bind any Holder of a Claim against, or Interest in, the Debtor and his respective successors and assigns, whether or not the Claim or Interest of such Holder is impaired under the Plan and whether or not such Holder has accepted the Plan.  The rights, benefits and obligations of any entity named or referred to in the Plan, whose actions may be required to effectuate the terms of the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such entity (including, but not limited to, any trustee appointed for the Debtor under Chapters 7 or 11 of the Bankruptcy Code).

   8.22 <u>Severability</u>.  In the event that the Bankruptcy Court determines, prior to the Confirmation Date, that any provision of the Plan is invalid, void or unenforceable, the Bankruptcy Court shall, with the consent of the Debtor, have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation.   The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may be have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

   8.23 <u>Headings</u>.  Headings are utilized in the Plan for convenience and reference only and shall not constitute a part of the Plan for any other purpose.

   8.24 <u>Plan Controls</u>.  To the extent that the Plan is inconsistent with the Disclosure Statement, the provisions of the Plan shall be controlling.

Dated: June 5, 2019          By: */s/ Terrance J. McClinch*
                             Terrance J. McClinch
                             Debtor-in-Possession


                             */s/ D. Sam Anderson, Esq.*
                             D. Sam Anderson, Esq.
                             Adam R. Prescott, Esq.
                             BERNSTEIN, SHUR, SAWYER & NELSON, P.A.
                             100 Middle Street, P.O. Box 9729
                             Portland, ME 04104
                             Telephone: (207) 774-1200
                             Facsimile: (207) 774-1127