IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MAINE

| | |
|---|---|
| In re:<br><br>**TERRANCE J. MCCLINCH,**<br><br>Debtor. | Chapter 11<br><br>Case No. 18-10568 |

**DEBTOR'S MOTION FOR ENTRY OF ORDER APPROVING
SETTLEMENT WITH THE ARTHUR L. MCCLINCH TRUST PURSUANT
TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019**

Terrance J. McClinch, the above-captioned debtor (the "Debtor"), hereby moves (the "Motion") this Court for entry of an order approving, pursuant to §§ 105 and 363 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the settlement terms encompassed in that certain memorandum of settlement attached hereto as **Exhibit A** (the "Term Sheet")[1] by and between the Debtor and The Arthur L. McClinch Trust Dated April 3, 1981 (the "ALM Trust"), acting through its trustee Joseph A. Palsa ("Palsa"). In support of this Motion, the Debtor respectfully states as follows:

**JURISDICTION AND VENUE**

1. This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue of the case and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicates for the relief requested herein are Bankruptcy Code § 105 and Bankruptcy Rule 9019.

---

[1] Capitalized terms used, but not defined, herein shall have the meanings ascribed to such terms in the Term Sheet. The Debtor and Palsa are working on a formal settlement agreement to memorialize the Term Sheet. The Debtor will file the settlement agreement on the docket as soon as it is available in the upcoming days.

1

## BACKGROUND

3. On September 27, 2018 (the "Petition Date"), the Debtor filed a petition for relief under chapter 11 of the Bankruptcy Code.

4. On June 5, 2019, the Debtor filed his *Plan of Reorganization Dated June 5, 2019* (the "Plan") [D.E. 111]. On October 11, 2019, the Court entered an order confirming the Plan (the "Confirmation Order") [D.E. 144], subject to certain modifications described in the Confirmation Order.

5. Prior to the Petition Date, in October 2014, 185 Thorpe Street Corporation ("185 Thorpe Street Corp."), a real estate holding company solely owned by the Debtor, entered into an agreement (the "Thorpe Street Agreement") with Scinto Thorpe, LLC ("Scinto Thorpe") to sell the real property located at 185 Thorpe Street, Fairfield, Connecticut (the "Thorpe Street Property"). After a series of amendments to the Thorpe Street Agreement, 185 Thorpe Street Corp. transferred title to the Thorpe Street Property to Scinto Thorpe on or about September 25, 2018.

6. On or about March 13, 2020, 185 Thorpe Street Corp. and Scinto Thorpe entered into a further amendment (the "Sixth Amendment") of the Thorpe Street Agreement, which set the final purchase price for the Thorpe Street Property at $7,750,000. The Sixth Amendment provided that after certain advances and other adjustments, the final amount due to 185 Thorpe Street Corp. from Scinto Thorpe is $2,673,832 (the "Scinto Note"), which amount is payable upon the receipt of construction financing for development of the Thorpe Street Property.

7. On February 6, 2020, Palsa filed a *Complaint for Revocation of Confirmation of Debtor's Plan of Reorganization and for Other Relief* (the "Adversary Complaint") [D.E. 165], commencing an adversary proceeding against the Debtor, Case No. 20-01004 (the "Adversary Proceeding"). In the Adversary Complaint, Palsa alleges that the Debtor owes the ALM Trust an amount not less than $2,650,095 on account of the Debtor's defaults under a note between the

Debtor and the ALM Trust, and further seeks revocation of the Confirmation Order. The Adversary Proceeding is stayed pursuant to this Court's order entered on April 28, 2021. [D.E. 126].

8. On April 2, 2021, the ALM Trust filed a *Motion by the Arthur L. McClinch Trust Date April 3, 1981 For Conversion to Chapter 7 pursuant to 11 U.S.C. § 1112 with Incorporated Memorandum of Law* (the "Motion to Convert") [D.E. 198], seeking to convert this chapter 11 case to a case under chapter 7 for cause under § 1112 of the Bankruptcy Code. The hearing on the Motion to Convert has been continued to June 10, 2021. [D.E. 211].

## SUMMARY OF SETTLEMENT AGREEMENT

9. The Term Sheet includes, without limitation, the following key terms and conditions to resolve the disputes between the Debtor and Palsa, including the Adversary Proceeding and the Motion to Convert, all of which are subject to approval by this Court and the Connecticut Probate Court:[2]

> **Consent to Judgment.** The Debtor will consent to entry of a final judgment in favor of the ALM Trust in the Adversary Proceeding in the amount of $3,750,000.00 (the "Consent Judgment"); provided, however, that there will be no recourse for any amounts above the Settlement Payment (as defined below) against the Debtor, Nancy McClinch, Sean McClinch, and/or Kimberly McClinch (collectively, the "Excepted Parties").
>
> **Settlement Payment**. The Debtor shall pay to the ALM Trust the amount of **$2,750,000** (the "Settlement Payment"), which shall be comprised of: (a) a credit and surrender of the Debtor's contingent one-fifth (1/5) distributive share of the ALM Trust (which the Debtor and the ALM Trust have valued at $1,300,000), subject to the consent of Virginia McClinch, all beneficiaries of the ALM Trust, and approval by the Connecticut Probate Court in *In re: Estate of/In the Matter of Arthur L. McClinch under Agreement dated April 3, 1981*, Case No. 12-0604 (Conn. Probate Court, Fairfield County) (the "Connecticut Probate Proceeding"); and (b) a partial assignment of the Scinto Note and mortgage in the amount of $1,450,000 from the $2,673,832 due from Scinto Thorpe to 185 Thorpe Street Corp.

---

[2] The following is a summary of the material terms of the Term Sheet, which sets forth the full set of terms of the Parties' agreement. To the extent there is any inconsistency between the terms summarized herein and the actual terms set forth in the final settlement agreement, the settlement documents shall control.

pursuant to the Sixth Amendment. Payment of the Settlement Payment shall be secured by a partial assignment of the first mortgage in favor of the ALM Trust in the amount of $2,673,832.00 on the Thorpe Street Property and cross-collateralized with a second mortgage in favor of the ALM Trust in the amount of $2,750,000.00 on the property owned by the Debtor and his wife located at 2661 Congress Street, Fairfield, Connecticut 06824 (the "Congress Street Property").

**Assignment of Claims**.   The Debtor will assign to the ALM Trust all avoidance claims against third parties (excluding the Excepted Parties) under chapter 5 of title 11 of the Bankruptcy Code and any other claims of the Debtor as permitted by applicable law. Any amounts recovered by the ALM Trust from third parties under this settlement, after payment of fees, costs, and expenses of collection (including, but not limited to, attorneys' and experts' fees) shall be applied to reduce the Consent Judgment. To the extent amounts are recovered from third parties prior to the closing and payment under the Scinto Note in excess of $1,000,000.00 (after payment of fees, costs, and expenses of collection), the amounts owed to the ALM Trust from Scinto Thorpe under the Scinto Note shall be reduced on a dollar-for-dollar basis.

**Releases**. The Debtor and Sean and Kimberly McClinch, the Debtor's adult children (the "McClinch Adult Children"), will provide general releases and covenants not to sue in favor of Palsa, the Settlor of the ALM Trust, and all beneficiaries and their respective spouses of the ALM Trust in matters relating to the ALM Trust. The Trustee shall provide general releases and covenants not to sue to the McClinch Adult Children relating to the ALM Trust. The Trustee will provide a release and covenant not to sue to the Debtor, except to the extent necessary to permit the ALM Trust to have standing to pursue the claims contemplated in Paragraph 2 of the Term Sheet].

**Loan**. Upon approval of the settlement by both the Connecticut Probate Court and this Court, Palsa will provide a loan of $150,000 to the Debtor, payable as an up-front payment of $50,000 followed by four equal monthly installments of $25,000 each payable on the first day of each month after the up-front payment is made. The $150,000 loan will be repaid to the ALM Trust from the $2,673,832.00 payment from Scinto Thorpe.

## RELIEF REQUESTED AND BASIS FOR RELIEF

10.    As stated above, the Debtor has reached an agreement with Palsa and the ALM Trust to resolve all claims between the parties, and the Debtor seeks approval of that compromise from this Court under §§ 105 and 363 of the Bankruptcy Code and Bankruptcy Rule 9019.

11.    Section 105(a) of the Bankruptcy Code allows this Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy

4

Case 18-10568    Doc 214    Filed 05/04/21    Entered 05/04/21 18:00:32    Desc Main
Document    Page 5 of 11


Code]." 11 U.S.C. § 105(a). Bankruptcy Rule 9019 authorizes this Court to approve settlements. See Fed. R. Bankr. P. 9019(a) ("On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement."). "The federal courts have a well-established policy of encouraging settlement to promote judicial economy and limit the waste of judicial resources." Russian Standard Vodka (USA), Inc. v. Allied Domecq Spirits & Wine USA, Inc., 523 F. Supp. 2d 376, 384 (S.D.N.Y. 2007); see also U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship, 513 U.S. 18, 27-28 (1994) (discussing the general utility of settlement vis-à-vis judicial economy). The force of this federal policy is particularly acute in the bankruptcy context, where compromises and settlements are "a normal part of the process of reorganization." Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968). Indeed, to "minimize litigation and expedite the administration of a bankruptcy estate, 'compromises are favored in bankruptcy.'" Myers v. Martin (In re Martin), 91 F.3d 389, 393 (3d Cir. 1996) (quoting 9 COLLIER ON BANKRUPTCY ¶ 9019.03[1] (15th ed. rev. 1993)); see also In re Penn. Cent. Transp. Co., 596 F.2d 1102 (3d Cir. 1979); In re World Health Alts., Inc., 344 B.R. 291, 296 (Bankr. D. Del. 2006); In re Culmtech, Ltd., 118 B.R. 237, 238 (Bankr. M.D. Pa. 1990).

12. The decision of whether to approve a proposed settlement is committed to the discretion of the bankruptcy court, which must determine whether the proposed compromise is fair and equitable and in the best interest of the bankruptcy estate. See Jeffrey v. Desmond, 70 F.3d 183, 185 (1st Cir. 1995). In making this determination, the Court should consider:

    (a)    the probability of success in the litigation of the claim being compromised;

    (b)    the difficulties, if any, to be encountered in the matter of collection;

    (c)    the complexity of the litigation involved, and the expense, inconvenience and delay attending it; and

    (d)    the paramount interest of creditors and a proper deference to their reasonable views.

Jeffrey, at 184; see also In re High Voltage Eng'g Corp., 397 B.R. 579, 601 (Bankr. D. Mass. 2008). The Jeffrey factors are not, however, exclusive. In re Healthco, Int'l, Inc., 136 F.3d 45, 50 (1st Cir. 1998).

13. The proponent of a settlement is not required to demonstrate "that the settlement is the best possible compromise. Rather, the court must conclude that the settlement is 'within the reasonable range of litigation possibilities.'" In re World Health, 344 B.R. at 296 (internal citations and quotation marks omitted); see also In re Coram Healthcare Corp., 315 B.R. 321, 330 (Bankr. D. Del. 2004) ("[T]he court does not have to be convinced that the settlement is the best possible compromise.").

14. Application of the foregoing standards to the circumstances of this chapter 11 case strongly weighs in favor of approving the settlement because it is in the best interests of the Debtor, his creditors, and all parties-in-interest.

**A.    The probability of success in the litigation of the claim being compromised.**

15. As this Court is aware, the Adversary Proceeding has been hotly contested between the Debtor and Palsa. The Debtor believes that the settlement with Palsa fairly accounts for the risk of loss to the Debtor and the amount of a judgment that Palsa might obtain if the litigation proceeds to a conclusion. Although the Debtor believes that he has significant defenses to the revocation and fraud claims, the Debtor acknowledges that there is always the risk that the trier of fact will have a different view. Likewise, because this Court has dismissed the Debtor's counterclaims against Palsa with prejudice, the Debtor believes that a settlement paying the ALM Trust an amount roughly consistent with what might be found outstanding under the ALM Trust note is fair and reasonable.

6

**B.     The difficulties, if any, to be encountered in the matter of collection.**

16.    The Debtor does not believe this factor is material to the settlement analysis, given that the Debtor no longer has counterclaims against Palsa that might necessitate collection.

**C.     The complexity of the litigation involved, and the expense, inconvenience and delay attending it.**

17.    The legal issues involved in the four causes of action in the Adversary Proceeding are not particularly complex or novel, but what has turned into expansive discovery has added significant complexity and cost to matter.  Likewise, the Debtor reasonably anticipates that completing outstanding discovery, summary judgment, pre-trial matters, and trial will likely cost the Debtor well in excess of $100,000.00 more in legal fees and costs, in addition to the tens of thousands already incurred.  The litigation also is particularly challenging for the Debtor due to his health issues and present location in Montana.  Although use of remote tools has helped, the Debtor continues to face logistical issues due to his location and time in and out of medical facilities that impose a significant strain on him personally and financially.  Further, the Debtor understands that the ALM Trust has spent approximately $800,000.00 in legal fees in this matter.  Because that money is being paid by the ALM Trust, and because the Debtor is relinquishing his one-fifth interest in the ALM Trust in the settlement, every day that the litigation continues costs the Debtor both in the lost value of his trust interests (as an asset for settlement) and costs for his own legal defense.

18.    Finally, the pending claim to revoke the Confirmation Order and the significant burden of litigation on the Debtor have, in many ways, side-tracked what was a highly successful chapter 11 reorganization.  And of note, the Debtor has been unable to obtain a final decree and close the case with the Adversary Proceeding pending, which adds further costs and burdens for the Debtor (such as paying Spinglass for monthly reporting and paying U.S. Trustee fees).

Approval of the settlement will end the Adversary Proceeding, and the Debtor expects to file a motion for entry of final decree to be heard in parallel with this Motion.

**D.    The paramount interest of creditors and a proper deference to their reasonable views.**

19.    To ascertain how the settlement affects the interests of creditors, it is important to start with the overall success of the Debtor's and his affiliate's chapter 11 cases. There has been a narrative, at times, that the Debtor has misused the chapter 11 process, but history shows that these cases were highly effective and beneficial for creditors.

20.    In reality, the Debtor and his affiliated entities have paid off over $6 million in debt in the past couple of years through various bankruptcy cases. A brief recap of those cases shows exactly the significant effort—and success—of those cases in paying creditors:

- In his personal chapter 11 case, the Debtor sold two properties at 5 and 11 Alley Road, East Boothbay, Maine, and paid approximately $785,000.00 to lenders Joseph and Madeline M. Lonski at closing of the sale.[3]

- In the Circle 9 Cattle Company, LLC chapter 11 case, that debtor, an entity owned by the Debtor, sold a ranch in Montana for over $5 million and paid off millions of dollars of liens held by First Interstate Bank, Coastal Realty Capital, LLC, TPL Financial, and Camden National Bank, for a total distribution to creditors of $4,542,361.40.[4]

---

[3] See Motion for Order Authorizing: (A) Sale of Certain of The Debtor's Property Free and Clear of Liens, Claims, and Encumbrances; (B) Payment of Commission to Debtor's Real Estate Broker; and (C) Distribution of Sale Proceeds at Closing to Certain Secured Parties and Broker [D.E. 76] and Order Granting Motion for Order Authorizing: (A) Sale of Certain of The Debtor's Property Free and Clear of Liens, Claims, and Encumbrances; (B) Payment of Commission to Debtor's Real Estate Broker; and (C) Distribution of Sale Proceeds at Closing to Certain Secured Parties and Broker [D.E. 86].

[4] See Case No. 18-10569, Motion for Order Authorizing: (I) Sale of Debtor's Property Free and Clear of Liens, Claims, and Encumbrances; (II) Payment of Commission to Debtor's Real Estate Broker; (III) Retention of and Payment to Local Counsel in Montana; (IV) Distribution of Sale Proceeds at Closing; (V) Transfer of Debtor's Remaining Post-Closing Proceeds to Terrance McClinch; and (VI) Contingent Dismissal of The Debtor's Case [D.E. 76] and Order Granting, In Part, Debtor's Motion for Order Authorizing: (I) Sale of Debtor's Property Free and Clear of Liens, Claims, and Encumbrances; (II) Payment of Commission to Debtor's Real Estate Broker; (III) Retention of and Payment to Local Counsel in Montana; (IV) Distribution of Sale Proceeds at Closing; (V) Transfer of Debtor's Remaining Post-Closing Proceeds to Terrance McClinch; and (VI) Contingent Dismissal of The Debtor's Case [D.E. 104].

- In the Candlelight Farms Aviation, LLC chapter 11 case, that debtor, an entity owned by the Debtor, sold an airport property after dismissal of the case and paid over $100,000 for property tax liens.

21. The settlement with Palsa will resolve the Debtor's obligations to his remaining largest potential creditor, the ALM Trust. The Debtor, moreover, will retain more than sufficient assets to satisfy his few remaining Plan obligations.

22. *First*, in Class One of the Plan (as modified by the Confirmation Order), Bank of America (the definition of which includes MEB and Select Portfolio Servicing) has an Allowed Secured Claim against the Debtor. Bank of America has received relief from stay to foreclose on the Congress Street Property, which is a negotiated right and remedy consented to by Bank of America under the Plan. See Confirmation Order at ¶ 2 ("In the event that the Debtor fails to make a timely payment on the Class One Claim, fails to remain current on property taxes for the Congress Street Property, or fails to maintain a reasonable insurance policy on the Congress Street Property as set forth herein, Bank of America shall provide written notice to the Debtor and his counsel … stating the basis for the default…. If the Debtor fails to cure the default identified in the Default Notice within fifteen (15) business days of the Default Notice, Bank of America shall be entitled to exercise any rights and remedies available to it by law or contract without the need to seek further relief from the Bankruptcy Court."). Thus, the Class One claim has been addressed in accordance with the Plan, and no further action is necessary to protect the interests of Bank of America related to the settlement.

23. *Second*, Class Two of the Plan contains the property tax claim of the Town of Fairfield in the principal amount of $41,260.27. In addition to payments under the Plan, the Plan also provides that, because the tax claim is secured, in the event the Congress Street Property is sold prior to the maturity of the obligations owed to the Town of Fairfield, the remaining Class Two Claims shall be paid at the closing of the sale of the Congress Street Property. The Congress

Street Property is anticipated to go on the market in the near future, and the town will be paid in full at that time. Thus, the interests of the town are not negatively impacted by the settlement.

24. ***Third***, Class Three of the Plan addresses allowed general unsecured claims. Pursuant to the Plan, the Debtor is required to make quarterly payments equal to the amount of the Allowed Unsecured Claims against the Debtor amortized over thirty years at an interest rate equal to the Federal Judgment rate of interest in effect on the Confirmation Date, with a balloon payment for the remaining amounts owed to be made in year ten. See Plan, Article 4.4. The claims in Class Three are minimal. Specially, excluding "de minimis" claims (those payments of less than $50.00, see Plan, Article 8.9), which are not required to be paid without written request of the creditor (no such requests have been received), the aggregate quarterly payment amount for Class Three is $1,914.71 to five creditors. Payments were due to start in January 2020, and of the five non-de minimis creditors in Class Three, the Debtor was current as of January 2021 with two of them.

25. Under the settlement, the Debtor will receive payments over five months from the ALM Trust. Upon receipt of each of the five payments, the Debtor will make a quarterly payment under the Plan to bring the Class Three payment obligations current through the end of Q1 2021 (representing the five quarters from Q1 2020 through Q1 2021).[5] This approach will ensure that any defaults under the Plan are cured, and the remaining payout to the Debtor under the settlement will be more than adequate to address the remaining amounts (with accrued interest) in Class Three (which are approximately $140,000).

---

[5] To the extent a creditor in Class Three already received a payment, the Debtor will not double pay that creditor, but will bring it current as needed.

**Rule 6004 Waiver**

To the extent applicable, the Debtor requests that this Court waive the 14-day stay in Rule 6004 so that the parties may effectuate the agreement immediately upon entry of an order granting this Motion.

**WHEREFORE**, the Debtor respectfully requests that this Court enter an order approving the settlement and granting such other and further relief as may be just and proper.

Dated:   May 4, 2021

                                      **TERRANCE J. MCCLINCH**

                                      By: */s/   Adam R. Prescott*
                                      D. Sam Anderson
                                      Adam R. Prescott
                                      100 Middle Street
                                      PO Box 9729
                                      Portland, Maine 04104
                                      Telephone: (207) 774-1200
                                      Facsimile: (207) 774-1127
                                      sanderson@bernsteinshur.com
                                      aprescott@bernsteinshur.com

                                      *Counsel to the Debtor*